## 59158. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. NELSON.

McMURRAY, Presiding Judge.

On November 3, 1977, Bill Chambers, d/b/a Chambers Dairy Company, was insured by Georgia Farm Bureau Mutual Insurance Company under one of its policies which contains coverage of a tractor-trailer, a type of motor vehicle, scheduled on that policy. The policy contains coverage pursuant to the Georgia Motor Vehicle Accident Reparations Act. The Georgia Farm Bureau Mutual Insurance Company is a mutual insurance corporation of the State of Georgia having a principal office and place of business in Bibb County, Georgia,

On November 3, 1977, James R. Nelson was engaged by the insured, Bill Chambers, to take a 1971 GMC tractor, owned by the said Chambers, and a 1961 flat bed trailer, owned by the said Chambers, to a business in Milledgeville, Georgia, for the purpose of getting a load of lumber, to be hauled by Nelson to a location in North Carolina on November 4, 1977. The tractor-trailer proceeded to Milledgeville, was loaded and returned to the farm of Chambers Dairy Company where Nelson

disconnected the tractor from the flat bed load of lumber. Nelson was in the process of reconnecting the trailer to the tractor when a portion of the load of lumber shifted and fell on him and killed him. This tractor-trailer was scheduled on the policy of insurance and the policy was in full force and effect at the time of the occurrence. There were no eyewitnesses at the time of the occurrence but at that time the trailer was not attached to the tractor. The front end of the trailer, when not connected to the tractor, is held up by two dollies and after the occurrence it was discovered that one of the dollies which held up the trailer had collapsed and there was a hydraulic jack near the trailer where the load of lumber had fallen on the deceased. The widow made demand upon the insurer for payment under its Georgia Motor Vehicle Accident Reparations Act clauses in the insurance policy (no-fault), but the insurer has refused to make any payment.

Mrs. James R. Nelson, alleging that her husband was killed in the act of connecting one of the insured's tractors to one of the insured's trailers, which trailer was loaded with lumber for the purpose of transporting same to North Carolina, and that her husband was killed in attempting to engage the trailer to the fifth wheel of the tractor, the dolly having collapsed on the trailer, and it was necessary to jack up the front end of the trailer to engage it with the tractor, sued Georgia Farm Bureau Mutual Insurance Company for sums due under the Georgia Motor Vehicle Accident Reparations Act clauses of the policy, that is, for $2,320 as her husband's funeral expenses and for other compensation due resulting from the injuries causing his death under the policy without regard to fault, in the aggregate sum of $20,000. Plaintiff also contends that proof of loss of income and funeral expenses was sent to defendant and more than 30 days has elapsed although demand was made upon the defendant. Plaintiff seeks the penalty and reasonable attorney fees as a result of defendant's bad faith in refusing to pay under the policy.

The defendant answered, admitting jurisdiction and coverage of the tractor-trailer involved to the employer Bill Chambers, as principal insured. It denied the claim otherwise in its entirety contending that while there was coverage if the trailer was connected with the tractor but

that at a time when it was not being drawn by the tractor the decedent was performing some operation of the trailer, the exact nature of which is not known, although it was advised that he was attempting to jack the trailer up. It thus contends there was no coverage when the lumber apparently fell on the decedent, who was on the ground, and which killed him. It admitted, however, that the personal injury protection and the additional personal injury protection clauses of the policy did provide both the statutory minimum coverage plus an additional aggregate of $5,000 optional coverage. It further contends that a trailer is included in the definition of a motor vehicle only when the same is "drawn by or attached to such a vehicle," and since decedent's death occurred when the trailer was neither being drawn by nor attached to the motor vehicle there was no coverage under the policy, hence the defendant is not indebted to the plaintiff in any sum. Defendant further defended by showing the coverage under the policy, if there was coverage, which it denied, was $1,500 funeral expenses under its basic protection and "up to a maximum of an additional $2,000" under the optional coverage; and during plaintiff's widowhood, payment of 85% of the husband's weekly earnings up to a maximum benefit of $200 per week with "an aggregate loss of earnings benefit of $1,000.00," under the basic protection clause and "up to a maximum total of such benefits of $5,000, less any amount applied for funeral expenses above and beyond the basic protection" as to the additional optional coverage. It further defended by contending "it would not be indebted to the Plaintiff for any sum as penalty or attorney's fees for the reason that: (a) proper proof of loss, as required by the statute and the policy, have not been provided; and (b) even had proper proof been furnished, Defendant's failure or refusal to pay was in good faith."

Defendant also defended on the ground that payments of survivor's benefits were to be paid weekly. Hence, plaintiff would only be entitled to funeral benefits covered by the policy plus the weekly benefits up to the time of trial and that "it will make future payments in accordance with the policy and the statute," if it be finally determined to be indebted for weekly survivor's benefits.

The parties entered into a stipulation in general agreeing to the above set forth facts as being correct and setting forth in the stipulation that a copy of the policy of insurance was attached. The case was tried before the court without a jury. A finding of facts was entered in accordance with the stipulation that the decedent was covered by the policy, was employed at the time of his death by the principal insured at a weekly wage of $200 per week, decedent was plaintiff's husband at the time of his death and she is entitled to the proceeds of the survivor's loss provision in said policy issued by the defendant. The court further found that plaintiff's husband was using the vehicle insured by the defendant "for the purpose for which it was intended, and that he was in the process of reconnecting the trailer to the tractor when a portion of the lumber shifted and fell on him, resulting in his death." The court then found that the decedent's death arose out of the operation, maintenance and use of the insured's motor vehicle which was covered by defendant's insurance policy. The court also found that the defendant had notice (by reason that the insurance company representative investigated the same as early as November 11, 1977, and learned there were no eye-witnesses at the time of the occurrence) and that "a demand was made upon defendant by letter dated July 14, 1978" (attached to the stipulation). It then further found that the "defendant failed to carry the burden of showing its good faith in refusal of payment." The court then determined that as a result of its failure to pay, plaintiff was entitled to 85% of the deceased's weekly wages ($200), that is, $170 per week beginning November 3, 1977, and that the number of weeks having elapsed to cover the maximum amount provided in said policy, that is, the sum of $10,000. As a penalty, 25% of that amount was also assessed, or a total of $12,500 awarded. As the parties had stipulated that if the defendant was found to have acted in bad faith, $4,000 would be a reasonable amount for attorney fees, this amount was likewise awarded. A total judgment of $16,500 was awarded, and defendant appeals, contending that the judgment in favor of plaintiff is contrary to the terms of the insurance policy and the no-fault statute. Defendant also enumerates as error that

a judgment of more than $7,500 in personal injury protection benefits should not have been awarded, and the finding of damages and attorney fees. *Held:*

1. The Georgia Motor Vehicle Accident Reparations Act, Code Ann. § 56-3402b (Ga. L. 1974, pp. 113, 114; 1975, pp. 1202, 1203), defines a motor vehicle to be not only a vehicle having more than three load-bearing wheels and required to be registered under the laws of this state relating to motor vehicles designed primarily for operation upon the public streets, roads and highways, and driven by power other than muscular power, but the definition also "includes a trailer drawn by or attached to such a vehicle." It also defines the insured as "any other person using or occupying the insured vehicle with the express or implied permission of the named insured . . ." It also defines accidental bodily injury to include "death at any time resulting therefrom [injury, sickness, or disease], arising out of the operation, maintenance or use of a motor vehicle which is accidental as to the person claiming basic no-fault benefits as provided . . ." by the statute. It further defines "operation, maintenance or use of a motor vehicle" as meaning "operation, maintenance or use of a motor vehicle as a vehicle." It further states under the definitions that this does not include repairing, servicing or otherwise maintaining motor vehicles within the course of a business unless such conduct "occurs off the business premises or involves the actual operation of a motor vehicle as a vehicle on business premises, or (ii) conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying it," occupying meaning to be in or upon a motor vehicle or engaged in the immediate act of entering into or alighting from the motor vehicle.

2. Defendant argues that coverage was not required by statute as to the trailer standing unattached to any means of propulsion; hence, the policy did not purport to provide personal injury protection benefits here. It contends that an unattached trailer, incapable of self-propulsion, has been held not to be within the definition of "Motor Vehicle," citing *O'Steen v. Boone,* 117 Ga. App. 174, 175 (2) (160 SE2d 229).

However, the findings of fact, conclusions of law and

judgment entered by the trial court were not predicated on the supposition that the insurer was required to provide coverage of the trailer. Clearly when the trailer was attached to the tractor it became a motor vehicle known as a tractor-trailer. The theory argued by the plaintiff and adopted by the trial court is that the incident resulting in the death of the plaintiff's decedent was within the normal use of the tractor to which the trailer had been attached and was to be attached and is therefore within the coverage afforded. Clearly as defined in the statute the use of a motor vehicle means its use as a vehicle. The incident did not necessarily result in the course of loading and unloading the vehicle; hence, the plaintiff's decedent's death did not arise out of occupying, that is, being in or upon the motor vehicle or engaged in the immediate act of entering into or alighting from the motor vehicle.

In *Hartford Acc. & Indem. Co. v. Booker,* 140 Ga. App. 3 (230 SE2d 70) (a somewhat similar case although it involves uninsured motorist coverage rather than no-fault coverage), plaintiff therein had parked a garbage truck he was driving, got out of the truck, and obtained a large garbage collection container from the truck and then walked to a point about 30 feet from the garbage truck, where he was struck by an uninsured vehicle. This court, in affirming the judgment of the trial court in favor of the plaintiff and against the defendant insurance company (under the uninsured motorist coverage), held that the injury arose from the use of the garbage truck within the contemplation of that portion of the uninsured motorist statute, Code Ann. § 56-407.1 (b) (Ga. L. 1963, p. 588; 1964, p. 306; 1967, pp. 463, 468; 1968, pp. 1089, 1091; 1968, pp. 1415, 1416; 1971; pp. 926, 927; 1972, pp. 882, 883; 1973, p. 487; 1975, p. 1221; 1976, pp. 1195, 1196). It describes insured persons to include "any person who *uses,* with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies." (Emphasis supplied.) Plaintiff contends that under the rationale of this case (although involving uninsured motorist coverage) plaintiff's decedent in the case sub judice was covered under the personal injury protection because the attaching of the trailer was a contemplated

use of the tractor. Therefore, based upon *Hartford Acc. & Indem. Co. v. Booker,* 140 Ga. App. 3, supra, the same language therein applies here that common sense "tells us that the parties [insurer and insured] certainly contemplated that the . . . truck would be loaded and unloaded . . . and that . . . [the tractor and trailer would be connected and disconnected] and that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck [in order to connect and disconnect the tractor-trailer] . . ." The hazards of an employee were more or less the same in the case sub judice; there in venturing upon the highway when using the truck for the purposes intended and here in connecting and disconnecting the tractor and trailer.

It is argued that under the language of Code Ann. § 56-3402b (h), supra, that attaching the trailer and tractor amounted to "conduct in the course of loading and unloading the vehicle." We do not agree. The insured was well aware it insured a tractor-trailer under its policy. The trailer was already loaded with cargo. We do not deem the attachment of the trailer to constitute "loading" of the tractor. The trial court did not err in finding and granting judgment in favor of the plaintiff as there was evidence to support its judgment.

3. Defendant next argues that the policy has two types of personal injury protection benefits. Under the basic personal injury protection the maximum was $1,500 for the funeral expenses and $1,000 for lost earnings or a total of only $2,500. However, plaintiff argues, and we agree, that $5,000 is due under the minimum coverage statute above. The statute provides for compensation to the injured persons, without regard to fault, up to an aggregate minimum limit of $5,000 per injured person. While the funeral expense is limited to the amount of $1,500 there is no such total maximum limit imposed on the loss of income. Instead, the limit on the loss of income is as to the total amount which can be collected per week, but there is no limitation on the number of weeks you can collect such loss of income, except for the $5,000 limitation on the aggregate benefits. The legislature simply did not intend to limit the amount of compensation for loss of income to $1,000 as the defendant argues here. In the

event of death of the injured person, compensation "shall be payable after such death as though the deceased were alive but totally disabled." See *Vansant v. Allstate Ins. Co.,* 142 Ga. App. 684, 685 (236 SE2d 858). The ruling of this court in that case makes it clear that there was no such limitation of $1,000 on the loss of income provision in the statute. Adding the $5,000 optional coverage to the basic $5,000 coverage above was exactly the determination as made by the trial court. There is no merit in this complaint.

4. The next enumeration of error is concerned with the awarding of bad faith damages and attorney fees. A reasonable attorney fee could not be awarded without a finding of bad faith. The mere fact that a proposition with respect to an insurance policy is a first impression issue does not, per se, vindicate the good faith of the company. See *Bituminous Cas. Corp. v. Mowery,* 145 Ga. App. 45, 50 (244 SE2d 573). A defense going far enough to show reasonable and probable cause for making it would vindicate the good faith of the insurer as would a complete defense to the action. See *Interstate Life & Acc. Ins. Co. v. Williamson,* 220 Ga. 323, 325 (138 SE2d 668) and *Colonial Life & Acc. Ins. Co. v. McClain,* 243 Ga. 263, 265 (1) (253 SE2d 745). However, under *Hartford Acc. & Indem. Co. v. Booker,* 140 Ga. App. 3, supra, this is not, per se, a first impression case.

Nevertheless, the trial court heard the case without a jury and the finding of the trial court should be upheld if there is any evidence to support the finding. In *Colonial Life & Acc. Ins. Co. v. McClain,* 243 Ga. 263, supra, the Supreme Court disapproved "the rule that a finding of bad faith is not authorized if the evidence would have supported a verdict in accordance with the contentions of the defendant." That court proceeded to hold that such a rule would virtually preclude a finding of bad faith and would allow unreasonable defenses to delay payment with impunity. The defendant here did plead that in the event it was determined that it was liable for the weekly payments it would proceed to pay same; nevertheless by the time this case was heard the entire amount was due and payable and all of it was past due as found by the trial court. This case was heard upon the allegations in the

pleadings and upon the stipulation of agreed facts. If there is any evidence to support the judgment the same should be affirmed. See *Bituminous Cas. Corp. v. Mowery,* 145 Ga. App. 45, 53, supra; *Gulf Life Ins. Co. v. Matthews,* 66 Ga. App. 162(2), 166-167 (17 SE2d 247); *National Life &c. Ins. Co. v. Moore,* 86 Ga. App. 618 (2), 626 (72 SE2d 141); *Reserve Life Ins. Co. v. Ayers,* 217 Ga. 206, 213 (121 SE2d 649).

*Judgment affirmed. Smith and Banke, JJ., concur.*

ARGUED JANUARY 16, 1980 — DECIDED FEBRUARY 27, 1980 —

*Denmark Groover, Jr.,* for appellant.
*Neal D. McKenney, Jane Jordan,* for appellee.