**Janice H. KELLEY, Plaintiff-Appellant,**

v.

**INTEGON INDEMNITY CORPORA-TION, Defendant-Appellee.**

**No. 83–8529**
**Non Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 29, 1984.

Steve A. Di Dio, Norcross, Ga., for plaintiff-appellant.

Fred W. Ajax Jr., Atlanta, Ga., for defendant-appellee.

Before FAY, VANCE and KRAVITCH, Circuit Judges.

PER CURIAM:

Our prior consideration of this case, *Kelley v. Integon Indemnity Corp.*, 726 F.2d 1519 (11th Cir.1984), resulted in our certification of controlling questions of Georgia law to the Supreme Court of Georgia.

That court's response in its decision of September 6, 1984, 253 Ga. 269, 320 S.E.2d 526, which is made an appendix hereto, provides a binding resolution of the issues before us.

On the basis of the appended decision we affirm the judgment of the district court.

AFFIRMED.

## APPENDIX

In the Supreme Court of Georgia
                    Decided: Sept. 6, 1984.

### 40952. KELLEY v. INTEGON INDEMNITY CORPORATION.

HILL, Chief Justice.

This no-fault insurance case is before this court on a certified question from the United States Court of Appeals for the Eleventh Circuit. The facts, as stated by that court, are as follows: "Appellant Janice Kelley filed suit against the defendant Integon Indemnity Corporation seeking no-fault insurance benefits under the Georgia Motor Vehicle Accident Reparations Act arising from her husband's death.

"On April 27, 1982, Charles R. Kelley was fatally electrocuted by a high voltage wire running above his employer's roadway construction site in Gordon County, Georgia. At the time of his death he was employed by Underground Pipeline, Inc., to construct a tunnel underneath a county road. He had driven to the construction site in a welding truck where he joined two co-workers who had arrived in a crane truck. Their initial task was to unload a drilling rig and two pieces of track into a roadside pit where the rig was to sit. Mr. Kelley stood in the pit and guided the equipment to the proper position. Once he positioned the first piece of track, his co-workers attached the truck's crane cable to the second piece of track and lowered it into the pit. As Kelley grasped the track, either the cable or the boom of the crane touched a high voltage wire. He died of electrocution. Appellant concedes that '[a]t no time did Kelley operate or occupy the crane truck itself.'

"At the time of the accident, the crane truck appeared to be insured under a no-fault motor vehicle policy written by the Integon Indemnity Corporation (Integon). Kelley's widow filed suit against Integon in Georgia state court. Integon removed the case to federal district court. That court denied Mrs. Kelley's motion for summary judgment and granted summary judgment for Integon."

An appeal to the Eleventh Circuit followed. That court certified the following question to this court: "Does the Georgia Motor Vehicle Accident Reparations Act restrict payment of no-fault insurance benefits to a permissive user of an insured motor vehicle for accidental bodily injury arising while the user was occupying the insured vehicle or while he was a pedestrian struck by it? If not, did Mr. Kelley's death arise out of the operation, maintenance or use of the crane truck as a vehicle?" [1]

In its order of certification, the Eleventh Circuit observed: "We believe this question is appropriate for resolution by the Supreme Court of Georgia. The record establishes that this issue arises with frequency. The intermediate Georgia state court has

---

1. Our no-fault law requires that insurers' policies provide "at least" the minimum coverages required by the no-fault law. OCGA § 33-34-3.

We deal here with the coverage required by law, not such coverage as may be provided by a "no-fault" insurance policy.

reached conflicting conclusions. Compare *Parker v. Atlanta Casualty Co.*, 157 Ga. App. 539, 278 S.E.2d 119 (1981 and *Clinton v. National Indemnity Co.*, 153 Ga.App. 491, 265 S.E.2d 841 (1980) with *Jones v. Transamerica Insurance Co.*, 154 Ga.App. 408, 268 S.E.2d 444 (1980) and *Georgia Farm Bureau Mutual Insurance Co. v. Nelson*, 153 Ga.App. 623, 266 S.E.2d 299 (Ga.App.1980)."

Our no-fault law defines several terms pertinent here. The word "insured" means, in addition to the insured named in the policy and certain relatives of the named insured, "any pedestrian struck by the insured vehicle, and any other person using or occupying the insured vehicle with the express or implied permission of the named insured or his spouse" OCGA § 33–34–2(5). " 'Occupying' means to be in or upon a motor vehicle or engaged in the immediate act of entering into or alighting from the motor vehicle." OCGA § 33–34–2(8). " 'Pedestrian' means any person not occupying a motor vehicle or a motorcycle or any other motor driven vehicle designed primarily for operation upon the public streets, roads, and highways or not in or upon a vehicle operated on stationary rails or tracks or not in or upon any aircraft." OCGA § 33–34–2(11). Unless the word "upon" were given an unduly broad construction, the deceased was not "occupying" the motor vehicle but was a "pedestrian" as defined by the act. However, the deceased was not "struck" by the insured vehicle. Hence, the deceased was not an "insured" (as defined by the act) by virtue of being a "pedestrian" but was an "insured" by virtue of "using ... the insured vehicle with the express or implied consent of the named insured." OCGA § 33–34–2(5), supra.

However, in addition to providing specified benefits without regard to fault to certain specified categories of persons, our no-fault law exempts insured persons from tort liability where benefits are available without regard to fault. OCGA § 33–34–9(a). Thus, under certain circumstances a person may be an "insured," as discussed above, without necessarily being entitled to no-fault benefits.[2]

An insurer is liable for payment of no-fault benefits when the injury complained of falls into one of the following three categories [OCGA § 33–34–7(a)]: "(1) Accidental bodily injury sustained within the United States of America ... by the insured and spouse and children if residing in the insured's household and the relatives of either if residents of the insured's household while occupying any motor vehicle or while a pedestrian as the result of being struck by a motor vehicle;[3] (2) Accidental bodily injury sustained by any other person while occupying the owner's motor vehicle if the accident occurs within the United States of America ...; and (3) Accidental bodily injury sustained by any other person as a result of being struck by the owner's motor vehicle while a pedestrian in this state." This provision, entitled "Payment of no-fault benefits," might also be denominated as the "insured events" provision.

Category 3 of OCGA § 33–34–7(a), supra, is not applicable here because the deceased, although a pedestrian as defined by the act, was not "struck" by the motor vehicle. Thus we focus our consideration on subsections 1 and 2, both of which require that the accidental bodily injury, as defined in OCGA § 33–34–2(1), (9), be sustained by a person, either an insured or other person, "occupying" a vehicle. Because we have concluded that the deceased was not occupying the vehicle, as defined in OCGA § 33–34–2(8), supra, at the time of the injury, we need not decide whether he received an "accidental bodily injury" as defined in

2. For example, had the deceased injured a pedestrian while driving the welding truck, being an "insured," he would have been exempt from tort liability to the extent provided in OCGA § 33–34–9.

3. Because the phrase "while a pedestrian" qualifies and relates back to the "insured," spouse and children as well as relatives, the phrase "while occupying" also qualifies and relates back to the "insured."

OCGA § 33–34–2(1)[4] "arising out of the operation, maintenance, or use of a motor vehicle" as defined in OCGA § 33–34–2(9).[5]

However, the Eleventh Circuit has called several cases to our attention, some of which seem to overlook the "occupying" requirement while others do not.

*Clinton v. National Indemnity Co.,* 153 Ga.App. 491, 265 S.E.2d 841 (1980), is directly in point. There a fireman arrived at the scene of a fire, took a hose from the firetruck which had been driven there by another fireman, played water on the fire, and was injured when the hose jerked and threw the fireman to the ground. The Court of Appeals correctly held that no-fault benefits were not due as the fireman was neither occupying the firetruck nor was he a pedestrian struck by it.

*Parker v. Atlanta Cas. Co.,* 157 Ga.App. 539, 278 S.E.2d 119 (1981), supra, involved the vehicle repair and service exclusion in the definition of "operation, maintenance and use" (see footnote 5). The repairman there slipped on grease on the floor of the garage as he alighted from a car after bringing it in from the lot outside. The court found that the repairman was not actually operating the vehicle and thus was not operating it as defined in OCGA § 33–34–2(9), [and hence sustained no accidental bodily injury as defined in OCGA § 33–34–2(1).] Because *Parker* dealt with the repair and service exclusion, we need not consider it further in this case.

In *Georgia Farm Bureau Ins. Co. v. Nelson,* 153 Ga.App. 623, 266 S.E.2d 299 (1980), decided 12 days after *Clinton,* supra, by a different panel, the deceased had driven a tractor-trailer load of lumber from Milledgeville to his employer's dairy while en route to North Carolina. He was killed when the load of lumber fell on him.

There were no witnesses. At the time, the trailer was disconnected from the tractor, one of the front dollies which held the trailer up when it was not connected to a tractor had collapsed, and there was a hydraulic jack near the trailer. Thus, the circumstantial evidence indicated that the deceased was attempting to jack the trailer up so as to reconnect it to the tractor when the load fell on him. The court cited only *Hartford Acc. & Indem. Co. v. Booker,* 140 Ga.App. 3, 230 S.E.2d 70 (1976), an uninsured motorist as opposed to a no-fault case. Our uninsured motorist law, OCGA § 33–7–11, does not contain an occupancy requirement, nor should it. The *Nelson* court did not apply the occupancy requirement of OCGA § 33–34–7(a)(1), (2) and hence Division 2 of that opinion is disapproved and will not be followed.

*Jones v. Transamerica Ins. Co.,* 154 Ga. App. 408, 268 S.E.2d 444 (1980), was decided by the panel which decided *Clinton,* supra, the firetruck case. There the insured was found dead of carbon monoxide poisoning on the floor between his car and the closed garage door. The car's ignition was on, its battery was dead, and its gas gauge registered empty. The court found that the deceased sustained an accidental bodily injury arising out of the "use" of the car. The court cited the *Booker* (uninsured motorist) case, supra, and did not focus on the occupancy requirement, but did find the plaintiff, the deceased's alleged widow, not to be entitled to recover as she had failed to prove a prior marriage of the deceased had been dissolved. We disapprove and will not follow Division 1 of the *Jones* decision as it failed to consider the requirement of occupancy.

Two other cases cited by plaintiff warrant consideration. In *Leverette v. Aetna*

---

**4.** OCGA § 33–34–2(1) provides: " 'Accidental bodily injury' means bodily injury ... arising out of the operation, maintenance, or use of a motor vehicle which is accidental as to the person claiming basic no-fault benefits...."

**5.** OCGA § 33–34–2(9) provides: " 'Operation, maintenance, or use of a motor vehicle' means operation, maintenance, or use of a motor vehicle as a vehicle. The term does not include [a]

conduct within the course of a business of repairing, servicing, or otherwise maintaining motor vehicles unless the conduct occurs off the business premises or involves the actual operation of a motor vehicle as a vehicle on business premises or [b] conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying it."

*Casualty & Surety Co.*, 157 Ga.App. 175, 276 S.E.2d 859 (1981), the driver of a pick-up truck stopped under a tree to pick plums. At first he stood on the bed of the truck with one foot on the side panel. Reaching higher, he put both feet on the side panel, and fell. Although he was "occupying" ("upon") the pickup, the court correctly found that the claimant was not using the vehicle as a vehicle, OCGA § 33–34–2(9), supra, footnote 5 [and hence did not suffer an accidental bodily injury within the meaning of OCGA § 3–34–2(1), supra, footnote 4].

In the recent case of *Jones v. Continental Ins. Co.*, 169 Ga.App. 153, 312 S.E.2d 173 (1983), the plaintiff, a Tupperware distributor, drove her car to a person's home to conduct a party. She parked in the driveway and carried her samples inside. While setting up the display she realized she had forgotten several items and returned to the car for them. As she unloaded the items, she stepped back into a hole in the driveway and fractured her ankle. The court correctly denied recovery on the ground that plaintiff was not occupying the vehicle but was unloading it.

Our review of the cases prompts us to make an observation for the benefit of the bar and bench of Georgia. Too little attention has been paid to the "insured events" provision of our no-fault law, which provides when payment of no-fault benefits shall be due. OCGA § 33–34–7(a), supra. We therefore answer the first question certified (which may be an affirmative answer) as follows: Georgia's Motor Vehicle Accident Reparations Act requires and restricts payment of no-fault insurance benefits in and to those instances specified in OCGA § 33–34–7 as the terms therein used are defined in the no-fault act, OCGA § 33–34–2. As heretofore shown, although the deceased in this case suffered grievous injuries presumably compensable under our workers' compensation law, his death is not compensable under our no-fault law because his was not an insured event under OCGA § 33–34–7(a), supra.

*Certified Question Answered as Aforesaid.*

All the Justices concur, except SMITH, J., who dissents.