69811. KICKLIGHTER v. ALLSTATE INSURANCE COMPANY.
(333 SE2d 670)

BEASLEY, Judge.

Allstate Insurance Company brought an action for declaratory judgment against its insured, Kicklighter, to establish that the policy did not cover a certain incident resulting in injuries.

Kicklighter filed an answer and a counterclaim seeking to recover for his losses plus bad faith penalty and attorney fees.

The parties entered into a stipulation of fact as follows: "[O]n

March 31, 1983 defendant Jack Kicklighter had driven his camper-van to the vicinity of the Doctortown landing, Wayne County, Georgia where he intended to spend the night and go fishing . . . [D]efendant Kicklighter's vehicle was a 1969 Ford Econoline Van which had been modified and renovated to include cabinets, a sink and a double bed . . . The renovations were completed at the time defendant purchased the policy of insurance . . . The primary use of said vehicle was that of a motor vehicle as defined by the Code of Georgia . . . [O]n the evening of March 31, 1983, defendant Kicklighter went to sleep on the bed in the vehicle while it was parked at the Doctortown landing, Wayne County, Georgia. When he went to sleep at approximately 8:00 p.m., he left a Coleman lantern burning inside the vehicle. When defendant Kicklighter awoke at approximately 2:00 or 2:15 a.m. on the morning of April 1, 1983, the interior of the vehicle was on fire and . . . it is agreed the fire started as a result of a defective lantern . . . At the time of the incident on March 31, 1983-April 1, 1983, defendant Kicklighter held a policy of insurance from Allstate Insurance Company."

The policy included the following language: "The Company will pay personal injury protection benefits for: (a) medical expenses, [etc.] . . . incurred with respect to bodily injury sustained by an eligible injured person and caused by an accident arising out of the operation, maintenance or use of a motor vehicle as a vehicle." It also provided that coverage did not apply "to bodily injury sustained by any person arising out of the maintenance or use of any motor vehicle when such motor vehicle is not used as a vehicle."

The Georgia Motor Vehicle Accident Reparations Act requires insurers to "pay basic no-fault benefits without regard to fault for economic loss resulting from . . . accidental bodily injury sustained . . . by the insured . . . while occupying any motor vehicle. . . ." OCGA § 33-34-7 (a) (1). " 'Accidental bodily injury' [must arise] out of the operation, maintenance or use of a motor vehicle. . . ." OCGA § 33-34-2 (1). " 'Operation, maintenance, or use of a motor vehicle' means operation, maintenance, or use of a motor vehicle as a vehicle." OCGA § 33-34-2 (9).

The parties submitted the issues for the trial court's determination. The court's order recognized the threshold question to be whether Kicklighter was using the insured vehicle as a vehicle at the time of injury. Based on the definition of "vehicle" in *Clinton v. Nat. Indem. Co.*, 153 Ga. App. 491, 492 (1) (265 SE2d 841) (1980), that it is basically "a means of conveyance," the court agreed that the van was a motor vehicle and Kicklighter was using it. However, it found he was not using the vehicle as a means of conveying persons or things when he was injured and thus concluded that he was not entitled to coverage under the policy.

Kicklighter appeals. *Held*:

This court has often been called upon to construe and apply a clause similar to the one in question. In *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562, 563 (236 SE2d 550) (1977), it was observed that the term "arising out of" is not synonymous with proximate cause in its strict legal sense and does not require a finding that the injury was directly and proximately caused by the use of the vehicle. We held that while the injury need not be the proximate result of "use" "[t]he question to be answered is whether the injury 'originated from,' 'had its origin in,' 'grew out of,' or 'flowed from' the use of the vehicle." Id. at 564.

Here the camper-van was a motor vehicle and the injury arose out of the use of it as such. The injury here arose out of the use of the camper-van as a motorized camper vehicle. That is what it was, by definition, and that was one of its visual and patent purposes, at the time it was insured. It was a multi-purpose vehicle, to be used not only for transporting but also for camping in, and it was being used in a regular way for that second pre-ordained purpose. Its use as a camper-van was intended and contemplated by insurer and insured.

"As a vehicle" is used in the policy as a generic term, just as "motor vehicle" is used. *This* policy was issued by Allstate for this camper-van, as the appropriate policy for it, to cover its use as this particular species of the genus "motor vehicle." Insurer was not required to obtain separate or different policy for covering "camper-vans" when "used as a camper-van." *This* "Allstate Automobile Policy" is what insurer issued, when insured purchased insurance for the camper-van. It was expressly listed by insurer as one of the four "vehicles" on the policy, but albeit only as "69 FORD" and the VIN, without further description. If insured needed an additional separate policy to cover its use as a camper, when it was not conveying or transporting people, the insurer no doubt would have said so if it intended limited coverage only. We cannot construe the contract to mean that the latter is what was meant, when insurer issued one generic "automobile policy" to cover all four vehicles ("76 FORD [VIN], 71 LEMANS [VIN], 74 CONINENTL (sic) [VIN], 69 FORD" [VIN]), including the camper-van. The narrow construction of "as a vehicle" would exclude coverage of its use for its obvious and outfitted purpose. To follow the logic of the insurer, the insured to whom it provided a standard automobile policy would have to purchase extra coverage for the occasions when he goes to Athens for a football game, for example; the subject policy would cover the event of travel but not the pre-game conviviality of a repast prepared in the cookery of the camper-van and served to friends in its dining area.

The four cases cited in *Kelley v. Integon Indem. Corp.*, 253 Ga. 269 (320 SE2d 526) (1984), can be readily distinguished. In *Ga. Farm*

*&c. Ins. Co. v. Nelson,* 153 Ga. App. 623 (266 SE2d 299) (1980), the trailer involved was actually disconnected from the tractor at the time of the incident, and the deceased was outside of the trailer. In *Jones v. Transamerica Ins. Co.,* 154 Ga. App. 408 (268 SE2d 444) (1980), the insured was also outside the automobile and was found dead in the garage from breathing poisonous carbon monoxide fumes. In *Jones v. Continental Ins. Co.,* 169 Ga. App. 153 (312 SE2d 173) (1983), a Tupperware distributor had parked her car, had gone inside, and was returning to her car when she stepped in a hole in the driveway and fractured her ankle. In all four cases, including *Leverette v. Aetna Cas. &c. Co.,* 157 Ga. App. 175 (276 SE2d 859) (1981), the injuries occurred outside the vehicle. Therefore, the "occupying" requirement was not met.

In *Clinton v. Nat. Indem. Co.,* supra, this court defined vehicle as that "in or on which a person or thing is or may be carried from one place to another, especially along the ground . . . any moving support or container fitted or used for the conveyance of bulky objects; a means of conveyance." The last phrase of that definition is not to be taken as an exclusive touchstone for determining whether a vehicle is used as a vehicle, for such would unnecessarily restrict the meaning of "vehicle" by ruling that it is a vehicle only when it is in the process of being used as a means of conveyance. To be sure, the capacity of a vehicle to be a means of conveyance is essential to a finding that it is a vehicle. This court did not intend to rule in *Clinton* that a vehicle is "used as a vehicle" only at the time it is serving as a means of conveyance. In fact, such an interpretation is directly at odds with the holding in *Clinton.* There, the fire truck was not being used as a conveyance at the time of the injury: the engine had been linked to a water pump and the truck was stationary. Coverage in that case was denied not because the vehicle was not being used as a vehicle — this court ruled that it was being used as a vehicle — but because the injured party was not "occupying" the vehicle at the time.

Thus, a pragmatic approach is to look at the intended functions of the particular vehicle involved and determine whether the use to which it was being put at the time of the injury was a real and substantial departure from the normal and intended purpose of the vehicle. If so, the injury would not be an "insured event," see *Kelley v. Integon Indem. Corp.,* supra, because the vehicle would not have been used as a vehicle. OCGA § 33-34-2 (1) and (9); § 33-34-7 (a) (1). If not, the use would be within the statute and, assuming the other requirements for an "insured event" were met, the injury would be compensable.

In fact, just such an analysis has been employed in this state and has yielded consistent results. In *Clinton,* supra at 493, where a fire truck was being used for pumping water, one of its intended purposes,

the court held that it was being used as a vehicle: "We cannot hold that this vehicle, which is indeed a motor vehicle and which is designed for the use on public roads for carrying persons or things (here a pump and water supply) ceases to be such a vehicle because it has come to a stop and because the motor, which is running, has been linked through a gear shift with the pump rather than with the wheels."

In *Payne v. Southern Guar. Ins. Co.*, 159 Ga. App. 67 (282 SE2d 711) (1981), the court quoted with approval from *Travelers Ins. Co. v. Aetna Cas. &c. Co.*, 491 SW2d 363 (Tenn.), where in a case factually similar to *Payne*, it was held that the "use" of a pickup truck as a receptacle for guns on a hunting trip was such a "use" of the vehicle as to come within the coverage of the automobile insurance policy. Based on that reasoning, this court found a similar use to be within the statute and the policy.

Similar reasoning was applied in *Leverette v. Aetna Cas. &c. Co.*, supra, to find that the use to which the vehicle was put in that case was not such as to bring the incident within the policy. There, the owner of the truck involved used the truck as a ladder, standing on it to pick plums from a tree, then falling to the ground and receiving an injury.

Instructive on the issue of considering the intended purpose of the vehicle involved is the recent case of *Ga. Farm &c. Ins. Co. v. Greene*, 174 Ga. App. 120, 122 (329 SE2d 204) (1985): "This court has adopted a liberal definition of the word 'use.' In *Hartford Accident &c. Co. v. Booker*, 140 Ga. App. 3 (230 SE2d 70) (1976), plaintiff, a sanitation driver, had parked his garbage truck close to the curb, got out, took a large garbage collection container with him, walked about 30 feet and was struck by a vehicle. This court quoted from *Federated Mut. Implement &c. Ins. Co. v. Gupton*, 241 FSupp. 509, 511 (1965): 'Exact definition of the term "use" is elusive, and is not capable of a definition which will leave everyone "comfortable." Whether or not an injury arose from the "use" of a motor vehicle within the contemplation of a liability policy or statute depends upon the factual context of each case. In this setting the term does not imply "remoteness," but does extend beyond actual physical contact. And it would seem to extend at least to the point, beyond physical contact, where control over the instrumentality is easily or reasonably at hand, and particularly when it is still being "utilized." ' In holding that the driver was involved in the 'use' of the truck at the time of his injury, the court pointed out that it was clear the vehicle was to be used for collection of refuse or garbage and 'common sense tells us that the parties certainly contemplated that the garbage truck would be loaded and unloaded and that the garbage to be loaded on said truck would be hauled to the truck by a garbage collection container and

that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck in order to collect the garbage.' [Cit.]"

Common experience informs us that motor vehicles now have many forms and shapes and serve many different purposes. The broader concept of motor vehicles, which guides our approach to this issue, is reflected in the U. S. Supreme Court's recent decision in *California v. Carney*, 471 U. S. __ (105 SC 2066, 85 LE2d 406) (1985): "In our increasingly mobile society, many vehicles used for transportation can be and are being used not only for transportation but for shelter . . ."

Applying a realistic approach to the present case, and in keeping with the Supreme Court's ruling in *Rustin v. State Farm &c. Ins. Co.* and *Spain v. State Farm &c. Ins. Co.*, 254 Ga. 494 (330 SE2d 356) (1985), we find that the insured vehicle was one which was equipped to convey its operator from place to place and to provide a place of shelter and for eating and sleeping occasionally when it was not being used strictly as a conveyance at the moment. Appellant's use of the vehicle at the time of his injury was clearly within the normal and intended purpose of the vehicle. Insofar as use of a vehicle as a vehicle is concerned, this case is indistinguishable from *Clinton*, the only distinction here being that Kicklighter was occupying his vehicle and the injured fireman in *Clinton* was not. Since appellant's injury arose from the use of his vehicle and he was occupying the vehicle at the time, his injury was an "insured event" (*Kelley*, supra) and was compensable.

*Judgment reversed. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 10, 1985 —
REHEARING DENIED JULY 31, 1985 — 

*Alvin Leaphart*, for appellant.
*J. Thomas Whelchel*, for appellee.