71642. COLLINS v. INTERNATIONAL INDEMNITY COMPANY.
(344 SE2d 427)

DEEN, Presiding Judge.

On May 2, 1981, at approximately 1:30 a.m., Michael Collins and Dennis Hendry left a restaurant on Collins' motorcycle and headed east on Bay Street towards the Bay Street Viaduct in Savannah. Eventually, Collins and Hendry somehow were either thrown from or knocked off the motorcycle as they crossed the viaduct. At approximately 3:00 a.m., as he was driving west on the viaduct, Ronald Lovett noticed parts of a motorcycle and the bodies of Collins and Hendry on the road. Lovett alerted eastbound traffic to the problem by blinking his lights off and on; turned around and drove back up the viaduct; parked his car across the westbound lanes (leaving on his headlights and hazard lights); and got out to help. Collins' body was

about 5 to 10 yards from Lovett's parked vehicle, while Hendry was 5 to 10 yards farther to the west.

Another vehicle heading west on the viaduct then struck Lovett's vehicle and came to rest approximately 45 feet from the point of impact; Lovett's vehicle was spun in a counterclockwise direction and came to rest about 32 feet from the point of impact. Lovett then noticed that the bodies of Collins and Hendry were in different positions than he had originally observed. Hendry survived but could not remember the details of the incident. Collins was pronounced dead on the scene.

Subsequently, Collins' estate commenced this action seeking recovery of no-fault benefits under the Georgia Motor Vehicle Accident Reparations Act, OCGA § 33-34-1 et seq., contending that Collins was a pedestrian at the time he was struck by either Lovett's vehicle or the second vehicle (or both). The trial court granted summary judgment for the appellee, International Indemnity Company (Lovett's insurer), and Collins' estate appeals. *Held:*

OCGA § 33-34-7 (3) provides that an insurer shall pay no-fault benefits for "[a]ccidental bodily injury sustained by any other person as a result of being struck by the owner's motor vehicle while a pedestrian in this state." OCGA § 33-34-2 (11) defines pedestrian as "any person not occupying a motor vehicle or a motorcycle . . . ." Collins' estate thus could recover no-fault benefits only if, at the time he was allegedly struck by Lovett's vehicle, Collins was a pedestrian and not an occupant of the motorcycle.

In *Partridge v. Southeastern Fidelity Ins. Co.*, 172 Ga. App. 466, 467 (323 SE2d 676) (1984), this court held that "an occupant of a motor vehicle who is accidentally ejected from that motor vehicle remains an occupant of the vehicle from which he is ejected until he is able to remove himself to a neutral zone or is removed to a neutral zone." Neither party disputes the applicability of *Partridge* to the instant case involving the apparently involuntary ejection of an occupant of a motorcycle, although the appellant contends that Collins had in effect been removed to a neutral zone by virtue of Lovett's act of parking his car in the roadway to protect Collins and Hendry from oncoming traffic. We are unable to accept that contention. Because no one removed Collins and Hendry to a neutral zone, and Collins and Hendry obviously not having done so themselves, under *Partridge v. Southeastern Fidelity Ins. Co.*, supra, they remained occupants of the motorcycle. Accordingly, the trial court properly granted summary judgment for the insurer.

*Judgment affirmed. Banke, C. J., Birdsong, P. J., Sognier, Pope and Benham, JJ., concur. McMurray, P. J., Carley and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

It was stipulated that Lovett "parked his car across the two west-bound lanes facing in an eastwardly direction toward Savannah. This was done to protect the bodies from the traffic moving in a west-wardly direction on the Viaduct. He turned on his emergency flashers and left the headlights on. Lovett's vehicle was white and easily visible to any vehicles coming toward him." Thus, there is evidence that he created a neutral zone, changing the scene from one of obvious danger to the two people who were lying in the middle lane of the roadway with nothing to stop oncoming traffic from hitting them, to one protected by physical warnings of lights and the obstacle of his own vehicle.

To confine "neutral zone" to a physical *removal* of the persons from the place they had come to rest after involuntarily leaving the motorcycle misses the distinction. It is a change in the nature of the person's relationship with the covered vehicle which is crucial. Was he still an "occupant" in the eyes of the law, or did he become a member of that other class, "pedestrians," covered under OCGA § 33-34-2 (11). The term "pedestrian" was broadly construed in *Garlin v. Thomas*, 90 Ga. App. 835, 837 (2) (84 SE2d 491) (1954) and recognized as broad in *Prince v. Cotton States Mut. Ins. Co.*, 143 Ga. App. 512 (239 SE2d 198) (1977). "Occupying" means to be in or upon a motor vehicle or engaged in the immediate act of entering into or alighting from the motor vehicle." OCGA § 33-34-2 (a). Lovett's actions, taken for just the very purpose of creating safety and establishing protection, altered the relationship of Collins vis-a-vis the motorcycle. It is at least a jury question. See *Cotton States Mut. Ins. Co. v. Statiras*, 157 Ga. App. 169, 173 (276 SE2d 853) (1981).

The occupant remains an "occupant" even after physically leaving the vehicle, unless the act of leaving is his own or, having left involuntarily, he comes into a neutral zone by his or some other intervention. *Partridge v. Southeastern Fidelity Ins. Co.*, 172 Ga. App. 466 (323 SE2d 676) (1984) is to be read this way, in my opinion. If Lovett had dragged the bodies to the side of the roadway, application of the majority's theory would lead to the conclusion that Collins had been removed to a neutral zone and so was no longer an occupant and was therefore a covered pedestrian. The physical moving of the bodies is not what would make the difference, however; it would be the creation of the zone of neutrality, which it can be argued was done by the placement of the car between them and oncoming traffic. Whether the zone or area in which they were lying had been made neutral is a matter of degree. The fact that the zone created was violated by someone who did not heed the warning and who was not deterred by the obstacle thereafter, does not change the fact that the "occupancy" of the motorcycle had been interrupted. Between the two classes, the

broader one is that of "pedestrian," as the court recognized in *Prince*, supra.

Giving all reasonable inferences to, and resolving all reasonable doubts in favor of, the claimant, I would not find that as a matter of law Collins was still an "occupant" and had not become a "pedestrian." Insurance contracts are to be construed to effect the purpose of insurance in favor of the insured. *James v. Penn. Gen. Ins. Co.*, 167 Ga. App. 427, 431 (306 SE2d 422) (1983). Broad interpretation has been given, as it is perceived to be the intent of the General Assembly to effect coverage under the no-fault law. See *Vansant v. Allstate Ins. Co.*, 142 Ga. App. 684, 686 (236 SE2d 858) (1977); *Franklin v. Southern Guaranty Ins. Co.*, 160 Ga. App. 279, 282 (287 SE2d 274) (1981).

I am authorized to state that Presiding Judge McMurray and Judge Carley join in this dissent.

DECIDED MARCH 19, 1986 —
REHEARING DENIED APRIL 3, 1986 — ▓▓▓▓▓▓▓▓

*Clarence L. Martin*, for appellant.
*J. Loren Fowler, Michael L. Wetzel*, for appellee.