## 62288. FRANKLIN v. SOUTHERN GUARANTY INSURANCE COMPANY.

CARLEY, Judge.

On June 20, 1979, the body of Otis Franklin, appellant's deceased, was discovered in a truck. The truck was off the roadway and had come to rest against a utility pole. Appellant instituted the instant action to recover no-fault death benefits from appellee, the insurer of the truck. Appellant's complaint alleged that "Otis Franklin suffered an accidental injury when the vehicle ran off the road and struck a utility pole. As a result of the aforesaid injury [appellant's] decedent Otis Franklin, died." Appellee answered, denying the material allegations of the complaint and further asserting the following: "The death of [appellant's] decedent, Otis Franklin, was caused by an acute coronary occlusion and acute coronary disease, and not by automobile accident. . ."

Dr. Anderson, the physician who conducted the autopsy on appellant's deceased, was deposed. It was Dr. Anderson's testimony that "[t]he cause of death was acute heart failure and probably disturbing — a disturbance of the cardiac rhythm, secondary to the occlusion of the left anterior descending coronary artery." Dr. Anderson was unable to state "with certainty whether the heart attack occurred before or after [Mr. Franklin] left the road. What we are able to determine from the autopsy examination was that this was a natural death at the wheel." Dr. Anderson further testified that "[t]here are two schools of thought on [the effects of stress on the acute nature of a coronary occlusion]. *There are some people that believe that a stressful situation will precipitate the final straw that broke the camel's back.* And then, there are other people that develop the same lesion while they are asleep and not suddenly..." (Emphasis supplied.) Dr. Anderson concluded that *"there's a fair body of knowledge that [stress] is some contributing factor to a [heart attack]* — particularly, prolonged physical stress." (Emphasis supplied.) Dr. Anderson was then asked to assume that "Otis Franklin is driving down the road, loses control of the truck through accidental means, is into — off of the road, physically he is attempting to repair control of the truck and, psychologically, he is frightened because of the impending danger of being — you know — his truck striking a telephone pole, would these factors have either caused or contributed to his heart attack?" Dr. Anderson responded: "My opinion is that it did not because of the time element. There are some cases where prolonged fright or flight type reactions in which a severe amount of physical stress — This is not the usual work day type of work, type physical stress, but *a real fright or flight response over a period of time, minutes, perhaps, may contribute to this.* The fact is that there is good reason in my mind to believe that it happened — the accident happened too quickly for enough fright or flight action to have then occurred to stimulate the heart attack. I think the most reasonable thing is that it [the heart attack] occurred first. . ." (Emphasis supplied.) Dr. Anderson's opinion as to the death was further elicited: "I think the cause of the — number one, the time involved, the short period of time involved that he would have been under this fright or flight response of the vehicle leaving the road, and the evidence is, as I perceive it, that the only instances in which you can really relate flight or fright to subsequent coronary artery occlusion, in the presence of pre-existing disease, is when this has occurred for some period of time, longer than — in my opinion, longer than it would have occurred for a vehicle to leave the road and hit a telephone pole. It's a very short period of time for a vehicle going forty or fifty miles an hour, or thirty miles an hour, to leave the road. . . It is somewhat

speculative to try to determine what frame of mind this person might have been in after the accident. *Whether he may have had a severe emotional response to this and this may have contributed, I couldn't really exclude that possibility,* although, this would still, under the circumstances, would still come under the heading if you will, of a natural death." (Emphasis supplied.)

Relying upon Dr. Anderson's deposition, both appellee and appellant moved for summary judgment. Having taken the cross-motions for summary judgment under advisement, the trial court entered an order making the following disposition of the case: "[Appellant] contends that death from any cause, which occurred while in a motor vehicle, is covered by the No-Fault provision as a matter of law. This court disagrees. And, therefore, [appellant's] Motion For Summary Judgment is overruled and denied. [Appellee's] Motion for Summary Judgment is granted." Appellant appeals, enumerating as error only the grant of summary judgment to appellee.

Clearly the trial court was correct in holding that death from *any* cause occurring in a motor vehicle does not, as a matter of law, automatically come within no-fault coverage. " 'Case law indicates that the injury need not be the proximate result of "use" in the strict sense, but it cannot be extended to something distinctly remote. [Cit.] Each case turns on its precise individual facts. The question to be answered is whether the injury "originated from," "had its origin in," "grew out of," or "flowed from" the use of the [motor vehicle as a] vehicle.' (Cit.)" *Leverette v. Aetna Cas. &c. Co.,* 157 Ga. App. 175, 176 (276 SE2d 859) (1981). However, that appellant was not entitled to summary judgment has no bearing in the instant case, the issue being whether summary judgment was erroneously granted in favor of appellee. See generally *Swilling v. R. C. Hasler, Inc.,* 151 Ga. App. 868 (261 SE2d 776) (1979). Thus the question for resolution is not whether the evidence of record demonstrates as a matter of law that the death of appellant's deceased was within the no-fault coverage. Instead, the issue in the instant case is whether the evidence pierced appellant's pleadings that the death was an "accidental injury" and therefore demonstrated as a matter of law that appellant was not entitled to death benefits under the policy issued by appellee.

Clearly the evidence of record in the instant case shows that appellant's deceased suffered from heart disease and died as the ultimate result of a heart attack. Appellee asserts that this unrebutted evidence authorized the grant of summary judgment. However, the mere fact that the death was the result of a heart attack rather than external trauma sustained in a collision will not preclude

a recovery of no-fault benefits if it "arose out of" the operation, maintenance or use of the motor vehicle. Code Ann. § 56-3402b (c). "[T]he term 'arising out of' does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused by the use of the vehicle, nor that the insured vehicle was exerting any physical force upon the instrumentality which was the immediate cause of the injury . . . [A]lmost any causal connection or relationship will do . . ." *Southeastern Fid. Ins. Co. v. Stevens,* 142 Ga. App. 562, 563-564 (236 SE2d 550) (1977). Appellant is entitled to no-fault benefits if "but for" the operation, maintenance or use of the truck by her deceased his death would not have occurred. See *Payne v. Southern Guar. Ins. Co.,* 159 Ga. App. 67 (282 SE2d 711) (1981). " 'The courts have been liberal in finding this "but for" relationship and in allowing recovery against automobile carriers . . .' [Cit.]" *Payne,* supra at 68. Thus, inquiry in the instant case does not end when the ultimate cause of death, the heart attack, is established because the "but for" cause of the heart attack itself must be ascertained. Since appellant would be entitled to recover no-fault benefits from appellee if "but for" the operation, maintenance or use of the vehicle appellant's deceased would not have suffered the heart attack which in fact killed him, unless the evidence of record negates any such finding, it was error to grant summary judgment to appellee. Even assuming that this is a case in which appellant will have to produce an expert's opinion in order to prevail at trial (see *Howard v. Walker,* 242 Ga. 406 (249 SE2d 45) (1978)), we find Dr. Anderson's deposition testimony an insufficient predicate upon which to authorize the grant of summary judgment to appellee. Construing the evidence most strongly in favor of appellant, Dr. Anderson's testimony may be read as stating his medical opinion that loss of control of a vehicle *might* precipitate a fatal heart attack and that this possibility could not be excluded in the instant case. See *City Council of Augusta v. Williams,* 137 Ga. App. 177, 178 (2) (223 SE2d 227) (1976) (workers' compensation). However, based upon his understanding of the factual circumstances surrounding the collision, it was Dr. Anderson's further opinion that this did not occur. We know of no reason why a jury would not be authorized to agree with Dr. Anderson's opinion that there was a "possibility" that the heart attack could have been brought on by the use or operation of the truck yet disagree with his supposition that "the most reasonable thing" was that it did not occur in the instant case. See *Ocean Acc. &c. Corp. v. Lane,* 64 Ga. App. 149 (12 SE2d 413) (1940). See also *Lawrence v. Gardner,* 154 Ga. App. 722 (270 SE2d 9) (1980). Accordingly, it was error to grant appellee summary judgment.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

DECIDED NOVEMBER 3, 1981.

*C. Lawrence Jewett,* for appellant.
*I. J. Parkerson,* for appellee.