75511. ALLSTATE INDEMNITY COMPANY v. DENISON et al.
(364 SE2d 103)

POPE, Judge.

In this declaratory judgment action, appellant Allstate sought a determination that it was not obligated to pay appellee Ellen M. Den-

ison, as widow and administratrix of her deceased husband's estate, personal injury protection benefits under an automobile insurance policy in effect at the time of Mr. Denison's death.

The stipulated and undisputed facts were as follows. Mr. Denison was found dead of carbon monoxide poisoning in his Chevrolet van parked in Greensboro, North Carolina, on January 30, 1986. The source of the carbon monoxide was a propane fuel heater devised by Denison from a propane lantern on which he had replaced the glass globe with an open peanut can. The device was placed in a five-gallon bucket on the floor of the van. Denison was an independent contractor who did mobile home repair work in various locations in several southeastern states for a Georgia company. Denison purchased the van, which was insured by Allstate, in connection with his work and outfitted the entire rear portion with shelving and racks in which to transport and store tools, supplies and materials used in his repair jobs. Between the two front seats of the van Denison built a storage compartment which was approximately the height of the seats. As he was responsible for paying his own expenses, including lodging, to save money on his out-of-town trips on some occasions Denison would sleep in his van overnight by lying across the two front seats and storage compartment. During cold weather he used the propane heating device to warm the van while he slept.

Denison's auto insurance policy provided for no-fault benefits "in accordance with the Georgia Motor Vehicle Accident Reparations Act" and "only when bodily injury, sickness, disease or death is caused by an accident arising from the use of a motor vehicle as a motor vehicle." The statute requires insurers to "pay basic no-fault benefits . . . for economic loss resulting from . . . [a]ccidental bodily injury sustained . . . by the insured . . . while occupying any motor vehicle. . . ." (Indention omitted.) OCGA § 33-34-7 (a) (1). " 'Accidental bodily injury' means bodily injury, sickness, or disease, including death at any time resulting from bodily injury, sickness, or disease, arising out of the operation, maintenance, or use of a motor vehicle which is accidental as to the person claiming basic no-fault benefits. . . ." OCGA § 33-34-2 (1). " 'Operation, maintenance, or use of a motor vehicle' means operation, maintenance or use of a motor vehicle *as a vehicle*." (Emphasis supplied.) OCGA § 33-34-2 (9). See *Cole v. Allstate Ins. Co.*, 173 Ga. App. 454 (326 SE2d 817) (1985).

Allstate moved for summary judgment on the ground that the use of a van which was not constructed for normal sleeping purposes as overnight lodging was a real and substantial departure from the normal and intended purpose of the vehicle; that thus Denison's death did not arise from the use of the van as a motor vehicle; and, therefore, no-fault coverage did not exist. Mrs. Denison also moved for summary judgment, relying on the construction of the rule made

in *Southeastern Fid. Ins. Co. v. Stevens*, 142 Ga. App. 562, 563-564 (1) (236 SE2d 550) (1977), "that the term 'arising out of' [the use or operation of a vehicle] does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused by the use of the vehicle, nor that the insured vehicle was exerting any physical force upon the instrumentality which was the immediate cause of the injury [and that] almost any causal connection or relationship will do. . . ." Insofar as "[e]ach case turns on its precise individual facts," id. at 564, Mrs. Denison cited *Kicklighter v. Allstate Ins. Co.*, 175 Ga. App. 586 (333 SE2d 670) (1985), as supporting authority. In *Kicklighter*, this court found that the insured's injuries from a fire occurring while he was sleeping in his van, which had been modified and renovated to include cabinets, a sink and a bed, arose from the use of his vehicle while he was occupying it and was a covered insured event.

Based on the law and facts recited above the trial court granted Mrs. Denison's motion for summary judgment and denied Allstate's motion. Allstate appeals. *Held*:

We find the facts of this case are fundamentally distinguishable from those of *Kicklighter v. Allstate Ins. Co.*, supra. In *Kicklighter*, the camper-van had been outfitted to include cabinets, a sink and a double bed at the time the policy was issued. One of the "visual and patent" purposes of the multi-purpose vehicle at the time it was insured was "for camping in, and it was being used in a regular way for that second pre-ordained purpose. Its use as a camper-van was intended and contemplated by insurer and insured." Id. at 588.

By contrast, transportation and storage were the only "visual and patent" purposes of the particular multi-purpose vehicle which is the subject of this case. The use of this van for overnight lodging was a substantial departure from its normal, intended and insured purposes. The renovations of the van in this case were made after the policy was issued. Even after the owner built the storage compartment between the two seats, which he used at night as a bed, a visual inspection would not have disclosed the van was to be used for regular overnight lodging.

We agree with the dissenting opinion that drivers should not be discouraged from using their vehicles for occasional sleeping and resting in order to avoid the danger of fatigue on the highway. Occasional resting is an obvious and foreseeable use of any vehicle primarily used for transportation and, therefore, should be an insured use of such a vehicle. However, the transformation of an automobile, van or any other vehicle into a place of lodging, particularly by the installation of a dangerous instrumentality such as a propane heater, is a substantial departure from the normal and intended purpose of a motor vehicle. To hold otherwise would, as a practical matter, transform the auto-

mobile insurer into a premises insurer. It follows that the trial court erred in granting Mrs. Denison's motion for summary judgment and in denying that of Allstate.

*Judgment reversed. Birdsong, C. J., Banke, P. J., Carley and Beasley, JJ., concur. Deen, P. J., McMurray, P. J., Sognier and Benham, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

I agree with the trial court's conclusion that Denison's injury grew out of his "use" of his van within the contemplation of the defined coverage. " 'Use' while an admittedly elusive term, may be defined as 'to employ for some purpose.' [Cit.]" *Rustin v. State Farm &c. Ins. Co.*, 254 Ga. 494, 495 (1) (330 SE2d 356) (1985). "This court has adopted a liberal definition of the word 'use.' " *Ga. Farm &c. Ins. Co. v. Greene*, 174 Ga. App. 120, 122 (329 SE2d 204) (1985). Therefore, in my view the position taken by this court in *Kicklighter v. Allstate Ins. Co.*, 175 Ga. App. 586, 591 (333 SE2d 670) (1985), is equally applicable here: "Applying a realistic approach to the present case, and in keeping with the Supreme Court's ruling in *Rustin* [, supra], we find that the insured vehicle was one which was equipped to convey its operator from place to place and to provide a place of shelter and for [storage] and sleeping occasionally when it was not being used strictly as a conveyance at the moment. [Denison's] use of the vehicle at the time of his injury was clearly within the normal and intended purpose of the vehicle."

The majority distinguishes *Kicklighter* because the court there considered the vehicle's "obvious and outfitted purpose," and its "visual and patent purposes, at the time it was insured," in determining that its use as a camper-van "was intended and contemplated by insurer and insured." Id. at 588. It holds that the only intended purposes for use of Denison's van were for transportation and storage, and that its use for sleeping was a "substantial departure" from its "intended and insured purposes." In my opinion, however, pure common sense dictates that sleeping in one's vehicle, whether or not it is outfitted with an actual bed, when regular lodging is not elected or is unavailable at the time or place it is needed, is only normal and natural behavior. Clearly, in the interest of public policy, fatigued drivers should be encouraged by their insurers to remove themselves from the highways to sleep or rest so they will not be a danger to other drivers.

As this court noted in *Kicklighter* (at 591), "[t]he broader concept of motor vehicles, which guides our approach to this issue, is reflected in the U. S. Supreme Court's recent decision in *California v. Carney*, 471 U. S. 386, 393 (105 SC 2066, 85 LE2d 406) (1985): " 'In our increasingly mobile society, many vehicles used for transportation can be and are being used not only for transportation but for shelter

. . .' " I likewise find pertinent the sentiment expressed in *Carney* that to distinguish between the camper-van in *Kicklighter* and Denison's van, as the majority does on the issue of considering the intended purpose of using the vehicle, would require that this determination be based "upon the size of the vehicle and the quality of its appointments." *Carney* at 393. I find such an analysis impractical and would decline, as did the *Carney* court, "to distinguish between 'worthy' and 'unworthy' vehicles." Id. at 394.

Accordingly, insofar as use of the van as a vehicle is concerned, I find this case to be indistinguishable from *Kicklighter*; and since Denison's injury arose from the use of his vehicle and he was occupying it at the time, would hold that his death was an insured event and was compensable. For these reasons, I respectfully dissent from the reversal of the grant of summary judgment in favor of Mrs. Denison.

I am authorized to state that Presiding Judge McMurray, Judge Sognier, and Judge Benham join in this dissent.

DECIDED DECEMBER 4, 1987 —
REHEARING DENIED DECEMBER 17, 1987 — 

*Thomas S. Carlock, Paul R. Vancil,* for appellant.
*J. Alvin Leaphart,* for appellees.