45355. DENISON et al. v. ALLSTATE INDEMNITY COMPANY.
(367 SE2d 801)

GREGORY, Justice.

Certiorari was granted to consider the holding of the Court of Appeals in *Allstate Indem. Co. v. Denison*, 185 Ga. App. 390 (364 SE2d 103) (1987). The Court of Appeals reversed the trial court which granted summary judgment to Denison and denied summary judgment to Allstate.

The case does not involve disputed facts but is entirely a question of law proper for decision on summary judgment. Ellen M. Denison is the widow of Bobby F. Denison, who died of carbon monoxide poisoning while sleeping for the night in his Chevrolet van parked in Greensboro, North Carolina. He was engaged as an independent contractor to repair mobile homes located in several southeastern states. He travelled from his home in Georgia in his van to which he added shelving and racks to accommodate the tools used in his work. On occasion, in order to save the cost of renting a room, he slept in the van using the two front seats and a part of the tool storage shelving for a bed. He jerry-built a heater from a propane lantern by replacing the glass globe with an open peanut can. This device produced the carbon monoxide which caused his death.

Allstate sued for a declaration that it was not liable to Denison under its insurance policy issued pursuant to the Georgia Motor Vehicle Accident Reparations Act. OCGA § 33-34-1 et seq. Allstate contended the van was not being used as a vehicle as required under the act. For that, Allstate relied on OCGA § 33-34-2 (9) which provides in part, " '(o)peration, maintenance, or use of a motor vehicle' means operation, maintenance, or use of a motor vehicle as a vehicle." It is agreed there is no coverage if the van was not used as a vehicle at the time of Denison's death.

The trial court was of the view that the van was used by Denison as a vehicle and granted summary judgment to the widow. The Court of Appeals held the use of the renovated van for overnight lodging

was a substantial departure from its normal, intended and insured purposes and therefore reversed the trial court. Our task is the construction of the language of the statute, "use of a motor vehicle as a vehicle."

Let us separate two aspects of the facts out of which this case arises and consider each apart from the other. (1) First, is the circumstance that the deceased was sleeping overnight in the van at the time of his death. (2) Second, is the circumstance that death resulted from carbon monoxide gas produced by a jerry-built heater.

1. If we consider the second aspect of the facts in isolation from the first our analysis requires simply a determination whether the mere modification of the van by the addition of the jerry-built heater renders the use of the van, as modified, something other than use as a vehicle. It can hardly be so.

The statute lends some assistance. While it does not define "vehicle" it does define "motor vehicle." A motor vehicle is a "vehicle having more than three load bearing wheels of a kind required to be registered under the laws of this state relating to motor vehicles designed primarily for operation upon the public streets. . .and driven by power other than muscular power." Probably, the removal of the wheels and motor from a van and setting it up as a cabin for a residence is such a modification as to render its use not as a vehicle. But, the mere addition of a heater to a van is not such a modification.

Suppose the deceased was operating his van along the highway when overcome and killed by carbon monoxide gas from the heater. He would be using his van as a vehicle. This demonstrates the modification of the van by the addition of the heater did not alter its use as a vehicle. Therefore, we set the second aspect of the facts aside and look to the first aspect of the facts, that the deceased was sleeping overnight in the van at the time of his death.

2. One definition of a vehicle is "any device on wheels. . . for conveying persons or objects, as (an). . .automobile, etc." Webster's New Twentieth Century Dictionary, second edition. Denison's van was clearly that. When he set out on the trip to North Carolina there is no doubt he was using his van as a device to convey him and his tools to his work place. The question is whether he ceased to use the van as a vehicle when he stopped and slept for the night.

If Denison had simply stopped the van at a traffic light, while one might truly say it was not at the moment conveying him from place to place, no one would contend he was not using the van as a vehicle just because it was not in motion. Likewise, if he pulled off the road to rest a spell, most would still consider his use of the van as a vehicle. And we say even the overnight stop for sleep did not remove the use from the sphere encompassed within the term "use as a vehicle." *Kicklighter v. Allstate Ins. Co.,* 175 Ga. App. 586 (333 SE2d 670)

(1985). While he slept the van was not actively conveying Denison from place to place, but the stop to sleep was a continuous part of the journey.

Thus, if Denison pulled over for the night to sleep in his van and another vehicle collided with the van, killing him, we would hold he was using the van as a vehicle at the time of his death. The circumstance that his death came as a result of a modification of the van to add a jerry-built heater does not alter our view. If neither the overnight sleeping nor the modification, standing alone, alter the use, the combination of them fails too.

*Judgment reversed. All the Justices concur, except Bell, J., who dissents.*

DECIDED MAY 12, 1988 —
RECONSIDERATION DENIED JUNE 1, 1988.

*Leaphart, Smith & Johnson, J. Alvin Leaphart,* for appellants.
*Webb, Carlock, Copeland, Selmer & Stair, Thomas S. Carlock, Paul R. Vancil,* for appellee.