A90A0137. FIRST FINANCIAL INSURANCE COMPANY v. RAINEY et al.
(394 SE2d 774)

BANKE, Presiding Judge.

The appellant issued a policy of motor vehicle insurance to appellee Willie Calhoun which provided the minimum no-fault coverage required by OCGA § 33-34-4 (a) (2). While this policy was in force, a large limb fell on the insured vehicle, injuring Calhoun's minor grandson, Max Ray Rainey, who was occupying it at the time. This accident occurred at a mobile home park where Mr. Calhoun's adult son and some other grandchildren were present. Accompanied by Max, Mr. Calhoun had driven to the mobile home park with the intention of picking up these other relatives and bringing them to his home. Upon their arrival, Max had gotten out of the vehicle and played for a brief period, until the others were ready to leave. His grandfather had then instructed him to get back in the car, and Max had obeyed, opening the door on the passenger side of the vehicle and climbing up onto the seat. Immediately after he did so a loud cracking noise was heard, and the limb, which was about four inches in diameter, fell onto the

open door of the vehicle. A portion of the limb was thereby deflected into the passenger compartment, where it struck Max on the back of the head.

The accident occurred on September 25, 1988. On September 30, 1988, a claim was made for the $2,500 in basic medical benefits provided by the policy; and on November 18, 1988, the appellant filed a declaratory judgment action seeking a determination that Max's injuries were not covered because they had not arisen "out of the operation, maintenance, or use of" the insured vehicle within the contemplation of OCGA § 33-34-2 (1). Named as defendants in the declaratory judgment action were the appellees herein, consisting of Max's mother, both individually and as his natural guardian, and Mr. Calhoun. They counterclaimed to recover the $2,500 in medical benefits allegedly due under the policy, as well as to recover a bad-faith penalty, attorney fees and punitive damages pursuant to OCGA § 33-34-6. The trial judge granted their motion for summary judgment on the basic benefits claim and allowed the other claims to go to a jury, which returned a verdict in their favor for a 25 percent bad-faith penalty in the amount of $675, attorney fees in the amount of $8,000, and punitive damages in the amount of $50,000. This appeal was taken from the denial of the appellant's motions for new trial or judgment notwithstanding the verdict. *Held*:

1. The appellant contends that the trial court erred in granting summary judgment to the appellees on their claim for basic benefits. We disagree.

Motor vehicle insurers are statutorily required to "pay basic no-fault benefits without regard to fault for economic loss resulting from: . . . (2) Accidental bodily injury sustained . . . while occupying the owner's motor vehicle. . . ." OCGA § 33-34-7 (a). The term " '[a]ccidental bodily injury' means bodily injury . . . arising out of the operation, maintenance, or use of a motor vehicle which is accidental as to the person claiming basic no-fault benefits. . . ." OCGA § 33-34-2 (1). " 'Operation, maintenance, or use of a motor vehicle' means operation, maintenance, or use of a motor vehicle as a vehicle. . . ." OCGA § 33-34-2 (9).

It is apparent without dispute that Max was occupying the insured vehicle at the time he was injured. Thus, the inquiry turns to whether his injuries arose out of the operation, maintenance, or use of the insured vehicle "as a vehicle" within the contemplation of OCGA § 33-34-2 (1) & (9). "[T]he term 'arising out of' does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused by the use of the vehicle, nor that the insured vehicle was exerting any physical force upon the instrumentality which was the immediate cause of the injury. . . . [A]lmost any causal connection or relationship will do. . . . 'The

question to be answered is whether the injury "originated from," "had its origin in," "grew out of," or "flowed from" the use of the vehicle.' " *Southeastern Fid. Ins. Co. v. Stevens*, 142 Ga. App. 562, 563-564 (236 SE2d 550) (1977) (upholding award of no-fault benefits to insured whose son was killed when pistol he was apparently handling discharged accidentally as vehicle turned off of pavement onto bumpy, unpaved road).

In determining whether a sufficient causal connection exists between the vehicle and the injuries, this court has stated that the injury will be deemed to have arisen from the operation or use of the insured vehicle if it would not have occurred " 'but for' the operation, maintenance or use of the [vehicle]. . . ." *Franklin v. Southern Guar. Ins. Co.*, 160 Ga. App. 279, 282 (287 SE2d 274) (1981). The insured in *Franklin* died of a heart attack while driving the insured vehicle. Applying this "but for" test, we concluded that a jury issue existed as to the insurer's liability for death benefits, noting that " ' "[t]he courts have been liberal in finding this 'but for' relationship and in allowing recovery against automobile carriers. . . ." [Cit.]' " Id. citing *Payne v. Southern Guar. Ins. Co.*, 159 Ga. App. 67, 68 (282 SE2d 711) (1981).

A review of cases decided since *Franklin* reveals that this liberality has not abated. In *Kicklighter v. Allstate Ins. Co.*, 175 Ga. App. 586, 591 (333 SE2d 670) (1985), for example, an insured injured in a fire ignited by a defective lantern as he was sleeping in a camper-van was held entitled to benefits as a matter of law, based on a determination that his "use of the vehicle at the time of his injury was clearly within the normal and intended purpose of the vehicle." Accord *Denison v. Allstate Indem. Co.*, 258 Ga. 269 (367 SE2d 801) (1988), rev'g *Allstate Indem. Co. v. Denison*, 185 Ga. App. 390 (364 SE2d 103) (1987) (where same result was reached in similar case involving van which had not been modified to serve as a camper). See also *State Farm Mut. &c. Ins. Co. v. Holmes*, 175 Ga. App. 655 (333 SE2d 917) (1985) (affirming award of death benefits, punitive damages and attorney fees to spouse of insured who drowned in flood waters after exiting vehicle). For a review of other cases, see generally Darroch & Barber, Motor Vehicle Ins. Law & Claims in Ga., § 34-2.

In support of its contention that a connection did not exist in this case between the injuries and the operation, maintenance or use of the vehicle, the appellant relies on a series of cases disallowing benefits to or on account of persons who were criminally assaulted while occupying an insured vehicle. See *Davis v. Criterion Ins. Co.*, 179 Ga. App. 235 (345 SE2d 913) (1986); *Weeks v. Auto-Owners Ins. Co.*, 175 Ga. App. 725 (334 SE2d 325) (1985); *Bennett v. Nat. Union Fire Ins. Co.*, 170 Ga. App. 829 (318 SE2d 670) (1984); *Washington v. Hartford Acc. &c. Co.*, 161 Ga. App. 431 (288 SE2d 343) (1982); *Westberry v.*

*State Farm &c. Ins. Co.,* 179 Ga. App. 700 (347 SE2d 688) (1986). With the exception of *Weeks,* the controlling factor in each of these cases clearly was the intentional and deliberate nature of the assault, " 'which took place in the vehicle simply because that is where the (victims) happened to be' " at the time. *Bennett,* supra, 170 Ga. App. at 830. Compare *Payne v. Southern Guar. Ins. Co.,* 159 Ga. App. 67, supra (holding that claimant was entitled to benefits as a matter of law where he was shot by firearm which discharged accidentally as it was being loaded into vehicle by a companion). Although the victim in *Weeks* was not assaulted deliberately but was struck "accidentally" by a bullet meant for a companion who was standing outside the vehicle, two of the three judges who participated in that decision stated in a special concurrence that the overriding reason the victim was not entitled to no-fault benefits was because she had been occupying the vehicle in furtherance of a criminal enterprise when the incident occurred.

We do not consider any of these cases to be apposite to the facts before us, since the injuries in the present case did not result from a criminal assault, and the injured claimant was not occupying the vehicle for a criminal purpose. Thus, applying the general rule that an occupant's injuries will be deemed covered if they would not have occurred "but for" the use, operation or maintenance of the vehicle as a vehicle, we affirm the trial court's conclusion that the appellant's liability for basic benefits was established as a matter of law. Compare *Leverett v. Aetna Cas. &c. Co.,* 157 Ga. App. 175 (276 SE2d 859) (1981) (disallowing claim by insured who fell off truck while standing on it in attempt to pick plums); *Cole v. New Hampshire Ins. Co.,* 188 Ga. App. 327 (373 SE2d 36) (1988) (disallowing claim by insured who was not occupying vehicle when injured but slipped and fell while walking back to her vehicle after paying for gas at gas station).

2. The appellant enumerates as error the trial court's denial of its motion for summary judgment on the appellees' claim for a bad-faith penalty, punitive damages and attorney fees. However, the denial of a motion for summary judgment becomes moot after judgment is entered on a jury verdict. See *Gaines v. Crompton & Knowles Corp.,* 190 Ga. App. 863, 867 (7) (380 SE2d 498) (1989); *Atlanta Car For Hire Assn. v. Whited,* 179 Ga. App. 893, 894 (1) (348 SE2d 102) (1986). Consequently, this enumeration of error presents nothing for review.

3. The appellant contends that the trial court erred in denying its motion for directed verdict on the claim for a bad-faith penalty, punitive damages and attorney fees, arguing that its defense to the basic benefits claim, though unsuccessful, was reasonable as a matter of law.

"The question of the insurer's good faith (or lack thereof) is one

of fact for the jury, and the jury's determination on this issue should be upheld on appeal if there is any evidence to support it. [Cits.] A jury award of punitive damages for wrongful refusal to pay a claim is thus entitled to great weight on appeal and should be disturbed only if the evidence at trial does not support an inference of bad faith on the insurer's part. [Cits.] Application of an 'any evidence' standard of review to § 33-34-6 . . . jury awards is consistent with the policy, previously recognized by this court, of encouraging prompt payment of no-fault insurance claims." *Binns v. MARTA*, 250 Ga. 847, 848 (301 SE2d 877) (1983).

The appellant argues that its good faith in litigating the claim is conclusively established by the absence of any legal precedent squarely holding that an accident of this nature is covered. However, the fact that an insurer is litigating an issue of "first impression" is not sufficient, in and of itself, to establish that it is doing so in "good faith." See *Bituminous Cas. Corp. v. Mowery*, 145 Ga. App. 45, 51 (244 SE2d 573) (1978). As previously indicated, the cases upon which the appellant places primary reliance are clearly distinguishable in that they involved criminal assaults. The appellant argues, however, that these cases "stand for the firmly established proposition of law that an injury will not be deemed to arise out of the operation, maintenance, or use of a motor vehicle if the claimant has been struck by a foreign object while occupying a vehicle, if the expulsion of the foreign object bears no connection to the operation, maintenance, or use of the vehicle." We cannot agree with this contention. In the first place, such a principle of law would be at odds with this court's repeated holdings that "the term 'arising out of' does not . . . require a finding . . . that the insured vehicle was exerting any physical force upon the instrumentality which was the cause of the injury." *Southeastern Fid. Ins. Co. v. Stevens*, supra, 142 Ga. App. at 563-4. See also *Payne v. Southern Guar. Ins. Co.*, supra, 159 Ga. App. at 68; *Insurance Co. of North America v. Dorris*, 161 Ga. App. 46, 47 (288 SE2d 856) (1982). Furthermore, it is not even necessary for an injury to be caused by contact with an "instrumentality" in order for it to be treated as compensable. See, e.g., *Franklin v. Southern Guar. Ins. Co.*, supra, 160 Ga. App. at 279 (where insured died of heart attack while driving insured vehicle). Accordingly, we can find no support in the case law for the principle relied on by the appellant.

There is no dispute over the fact that the claimant was occupying the insured vehicle for use as a vehicle when the injury occurred, nor is there any dispute over the fact that he incurred medical expenses in excess of $2,500 as a result of his injuries. The only dispute has been over the legal/metaphysical issue of whether a causal connection existed between the child's injuries and his occupancy and use of the vehicle. Given the prior holdings of this court that "almost any causal

connection or relationship will do," (see, e.g., *Southeastern Fid. Ins. Co. v. Stevens,* supra, 142 Ga. App. at 564; *Franklin v. Southern Guar. Ins. Co.,* supra, 160 Ga. App. at 282), we must reject the appellant's argument that a "close question" was presented on this issue. However, there is an additional factor in this case which the jury undoubtedly took into consideration in concluding that the appellant had failed to meet its burden of proof on the good-faith issue and which persuades us not to disturb the jury's verdict. The claim was for only $2,500, the minimum amount of medical benefits coverage required by law. See OCGA § 33-34-4 (a) (2). In filing the declaratory judgment action, the appellant clearly stood to incur litigation expenses and attorney fees substantially in excess of this amount (assuming, of course, that the appellees had the will and resources to pursue the matter); and since the occurrence which gave rise to the child's injuries may fairly be categorized as a freak accident, its decision to do so cannot reasonably be explained by a need for guidance in dealing with future claims of the same nature. Surely, the requirement of good faith demands some sense of proportionality in these matters. Taking all of these considerations into account, we have no hesitation in holding that the jury's verdict was supported by the evidence. Accord *Insurance Co. of North America v. Smith,* 189 Ga. App. 353 (1) (375 SE2d 866) (1988).

4. The appellant contends that the trial court erred in allowing its trial counsel to be called as a witness by the appellees for cross-examination on the issue of whether it had acted in reliance on legal advice in bringing the declaratory judgment action. The appellant argues both that the testimony in question was immaterial and that "it was improper for the trial court to compel [counsel's] testimony [without disqualifying] him as trial counsel for the appellant." However, the appellant's counsel did not object to the questioning on the ground that it lacked relevance to the issues being tried, nor did he move for a mistrial, seek to withdraw as counsel or request a continuance to enable the appellant to secure other counsel. Accordingly, the issues raised by this enumeration of error were not preserved for appeal.

5. In his written order disposing of the parties' cross-motions for summary judgment, the trial judge made certain comments to the effect that he believed the appellant had litigated the coverage issue in good faith "based upon an uncertainty created by certain statutory interpretations as rendered by the appellate courts," with the result that he did not consider the case to be an appropriate one for an assessment of penalties or other damages for bad faith. The court identified these comments at the outset as "an editorial and instructional aide" and ended them with the following statement: "These final comments are offered gratuitously and are not binding as to the

parties in this action." The appellant nevertheless contends that the court was precluded by these comments from allowing the claims for a bad-faith penalty, punitive damages and attorney fees to be put to the jury. This contention is patently without merit. We have previously held that the evidence was legally sufficient to allow these claims to go to the jury, and the trial judge obviously reached the same conclusion or he would not have denied the appellant's motion for directed verdict.

6. The appellees have moved this court to remand the case to the trial court, in the event of an affirmance, for an assessment of additional attorney fees for the cost of their legal representation on appeal. The appellant opposes the motion, arguing that OCGA § 5-6-6 and Court of Appeals Rule 26 (b) establish the exclusive remedy in this court for a frivolous appeal. However, the appellees do not seek to recover their attorney fees on appeal based on a contention that the appeal was frivolous; rather, they contend these fees are recoverable under OCGA § 33-34-6 as part of the total attorney fees incurred by them due to the appellant's refusal to pay their claim for basic no-fault benefits.

In construing the predecessor to OCGA § 33-4-6, a Code section closely analogous to § 33-34-6 dealing with bad faith in refusing to pay insurance claims generally, this court has held that all of the work done on the case, including work done on appeal, may be considered in awarding attorney fees. See *Reserve Life Ins. Co. v. Ayers*, 103 Ga. App. 576, 578 (120 SE2d 165) (1961), aff'd 217 Ga. 206 (121 SE2d 649) (1961). Based on that decision, we hold that the appellees in this case are entitled to recover their reasonable attorney fees on appeal pursuant to OCGA § 33-34-6, and we consequently direct the trial court to conduct further proceedings upon the return of the remittitur for the purpose of assessing such attorney fees.

*Judgment affirmed and case remanded with direction. McMurray, P. J., Sognier, Pope, Beasley and Cooper, JJ., concur. Carley, C. J., Deen, P. J., and Birdsong, J., dissent.*

BIRDSONG, Judge, dissenting.

Appellant contends that there was no causal connection between the injury causing agent (the falling tree limb), and the operation, maintenance, or use of the motor vehicle within the meaning of the applicable sections of the Georgia Motor Vehicle Accident Reparations Act. OCGA § 33-34-1 et seq. I agree.

Unlike my colleagues in the majority, I cannot conclude that the unfortunate injuries sustained by the child in this case *arose out of* the operation, maintenance, or use of the insured vehicle "as a vehicle." As the majority recognized, the question to be answered is whether the injury "originated from," "had its origin in," "grew out

of," or "flowed from" the use of the vehicle.

As stated by the majority, appellant relied on a series of cases where people happened to have been criminally assaulted while occupying the insured vehicle. Among those cases is the case of *Weeks v. Auto-Owners Ins. Co.*, 175 Ga. App. 725 (334 SE2d 325). In *Weeks* a passenger seated in the parked automobile was *accidentally* shot when the criminal perpetrator fired at a third-party dismounted passenger of the same vehicle. The court in *Weeks* concluded that "appellant's injury simply had no causal connection with the use of the insured's vehicle in this case." *Weeks*, supra at 726. Contrary to what the majority implies, two judges did not concur in the principal opinion in *Weeks* merely because the victim had been operating the vehicle in furtherance of a criminal enterprise when the crime occurred. In fact, the specially concurring opinion cites not a case in support of this proposition. Rather the two judges advanced the legal theory of vehicle use in furtherance of a criminal enterprise as "*an additional reason*" to that expressed by the majority while expressly agreeing with the legal analysis of the majority opinion in the first sentence of the concurring opinion. (Emphasis supplied.) Thus, *Weeks* is not merely a case which has value as physical precedent only. In fact, the majority opinion in *Weeks*, by virtue of being concurred in fully by all three judges, has full precedential value. Rather, it is the two-judge separate concurring opinion in *Weeks*, relied upon by the majority in the case sub judice in their attempt to distinguish *Weeks*, which would have value as physical precedent only. Slightly paraphrasing the well-established principle of law cited in *Weeks* so as to encompass the facts of this case, we find that " ' "where a connection appears between the 'use' of the [parked] vehicle and the [falling of the tree limb] and resulting injury [to the young child seated inside the vehicle when the passenger door was still open] such as to render it more likely that the one grew out of the other, it comes within the coverage defined." ' [Cits.] 'There must be more of a connection between the use of the vehicle and the [falling of the tree limb] and the resulting injury *than mere presence in the vehicle when the injury was sustained.*' " (Emphasis supplied.) *Weeks*, supra at 725. "Likewise, the connection must not be merely fortuitous." *Davis v. Criterion Ins. Co.*, 179 Ga. App. 235, 236 (345 SE2d 913) (the bus was merely the unfortunate location where the crime occurred). In the case sub judice, the falling tree limb falls within the category of events legally defined as "acts of God." The effect of the majority's decision in this case, in light of our existing precedent, is to cause the law of this state to be that the requisite *causal connection appears* between the "use" of the vehicle and the resulting injury when (a) an act of God just happens to injure a young child who happens to just enter the parked vehicle at the wrong time, and is merely present

therein as an unwitting passenger, (b) the vehicle just happens to be parked at the same location where the act of God occurs, and (c) the act of God is otherwise unrelated to the actual operation of the car as a vehicle; *such a causal connection would not occur*; however, if the same passenger in the same parked vehicle had the misfortune of being shot through the open car door by a passing criminal, then *no causal connection appears* between the use of the vehicle and the resulting injury. In my view, we have to engage in acts of legal prestidigitation to justify this anomaly.

Further, the majority in essence argues that "but for" his use of the car, the young child *would not have been in a position* to be hit by a falling tree and to incur the resultant injury. This is a "faulty application of the 'but for' test as the facts of the instant case show only an incidental connection between the [car and the falling tree] and was not an injury that 'arose out of' the use of the [car] as a vehicle for there 'must be more of a connection between the use of the vehicle and the [falling of the tree] . . . than mere presence in the vehicle. . . .' [Cit.] 'Case law indicates that the injury need not be the proximate result of "use" in the strict sense, but it cannot be extended to something . . . remote.' " *Westberry v. State Farm &c. Ins. Co.*, 179 Ga. App. 700, 701-702 (347 SE2d 688). The majority today extends the concept of "proximate result of use" to cover injury-producing incidents of the most remote nature. With this I cannot agree.

Moreover, I would thus find the insurer's argument to have been made in good faith. While issues of good faith or bad faith on the part of an insurer are normally reserved for the jury (*Gillem v. MARTA*, 160 Ga. App. 393, 395 (4) (287 SE2d 264)), "when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties. [Cit.] Good faith is determined by the reasonableness of nonpayment of a claim." *International Indem. Co. v. Collins*, 258 Ga. 236, 237 (2) (367 SE2d 786). Applying this test, I believe that appellant's denial of the claim was reasonable, and that it did not act in bad faith so as to support the imposition of bad faith penalties. Id.; compare *Fortson v. Cotton States Mut. Ins. Co.*, 168 Ga. App. 155, 158 (308 SE2d 382) (test of bad faith is as of the time of trial).

Merely because a legal argument is *novel* does not make it an argument done in bad faith. Such a staid position would throttle the orderly, albeit conservative, development of the law in this state.

While I fully recognize and appreciate the damage which can be done to an individual insured when pitted against the well-capitalized battery of legal counsel of an insurance company, nevertheless insurance companies too are entitled to certain basic rights of effective legal representation. When this court acts in a manner which deters an insurance company from advancing in litigation legitimate, but novel,

legal theories and arguments, we have not assisted the individual insureds of this state. Rather, we have merely provided another incentive for spiralling increases in the insurance rates of our citizens.

I believe that because no causal connection existed in this case, as a matter of law, that judgment should be reversed. However, assuming arguendo, a causal connection could be found to exist, under the facts of this case, as a matter of law, the insurance company's determination to contest rather than to pay this claim would be reasonable, and thus not in bad faith. Thus, I believe that the insurance company in any event acted in good faith, albeit aggressively, in the case sub judice, and that it should not have been assessed punitive damages, attorney fees, or bad faith penalty.

"[T]he appellate process affords us no latitude to make adjustments for the ill-earned good fortune of the lucky or the heart-rending misfortune of the unlucky." *Autry v. State*, 150 Ga. App. 584, 587 (258 SE2d 268). It is the duty of this court to see that justice is fairly dispensed to all parties concerned, and, this creates an equally important judicial obligation not to render judgments born only of generosity or compassion.

I respectfully dissent. I am authorized to state that Chief Judge Carley and Presiding Judge Deen join in this dissent.

ON MOTION FOR REHEARING.

The appellant contends on motion for rehearing that we have overlooked the holding of the Supreme Court in *International Indem. Co. v. Collins*, 258 Ga. 236 (367 SE2d 786) (1988), that "[w]hen the Court of Appeals is divided on an issue, *and certiorari is granted to resolve the issue*, the insurer is legally justified in litigating the issue and cannot be held liable for a statutory bad faith penalty as a matter of law." Id. at 238. (Emphasis supplied.) Of course, the Supreme Court has not yet had an opportunity to entertain an application for certiorari in the present case; and we have no way of knowing whether, if such an application is ultimately filed, it will be granted. Consequently, we do not view *International Indemnity* as compelling a reversal of the jury's award of penalties and attorney fees in this case.

Rather than simply paying a $2,500 no-fault claim submitted on behalf of a child who was concededly injured in connection with his use and occupancy of the insured vehicle, the appellant insurer chose to pursue a lengthy and costly declaratory judgment action to obtain a ruling that it had no obligation in the matter. This decision could not possibly have been cost effective even had the appellant prevailed in the declaratory judgment action, given the small size of the claim and the remoteness of the possibility that a freak occurrence of the

sort giving rise to it would repeat itself in the future. Of course, as it turned out, the appellant did not obtain a favorable ruling in the declaratory judgment action but instead obtained a ruling that its defense to the claim lacked merit as a matter of law. To reverse the jury's award of attorney fees and punitive damages in this situation would be to hold that no-fault insurers may resist small claims with impunity and thus, as a practical matter, defeat them, simply by interposing arguable defenses which, though insufficiently meritorious to withstand summary judgment proceedings, do not conflict squarely with existing precedent. Because we are unwilling to create such a rule and because we are unable to predict whether the Supreme Court will grant certiorari to review our decision in this regard, a majority of this court continues to believe the judgment of the trial court should be affirmed.

*The motion for rehearing is accordingly denied.*

DECIDED APRIL 11, 1990 —
REHEARING DENIED MAY 16, 1990 — ▐▌

*Crim & Bassler, Harry W. Bassler, Philip G. Pompilio,* for appellant.

*Burt & Swan, Walter H. Burt III, William S. Stone,* for appellees.