A98A0571, A98A0572. AMERICAN ASSOCIATION OF CAB COMPANIES, INC. v. OLUKOYA; and vice versa.

(505 SE2d 761)

Judge Harold R. Banke.

This is the third appearance of this case here. The underlying action arose from a December 4, 1987 car accident in which Oluyole Pius Olukoya was injured while driving his taxi cab. Olukoya's medical care and treatment totaled about $2,000. But in early 1988, when Olukoya requested payment for his medical bills from his no-fault insurer, the American Association of Cab Companies, Inc. ("AACCI"), payment was not forthcoming. In two demand letters, Olukoya provided the police report from the accident and attached copies of his medical bills. Initially, AACCI denied Olukoya's claim for no-fault benefits because the medical care had not been rendered by authorized or "approved" providers. In *Olukoya v. American Assn. of Cab Cos.*, 202 Ga. App. 251, 253-254 (2) (414 SE2d 275) (1991), we held that AACCI, as a no-fault self-insurer, acted unlawfully under OCGA § 33-34-1 et seq. in restricting claims for services to certain designated providers. Notwithstanding that ruling, AACCI still did not pay Olukoya's medical claims. Thereafter, Olukoya refiled suit against AACCI and its president, Cheru Terefe, who with his wife owned all of AACCI's stock. Olukoya asserted claims for the unpaid no-fault benefits, bad faith, punitive damages, RICO violations, and attorney fees.

Olukoya testified that he sustained injuries to his neck, wrist, and back from the accident and sought medical attention that same day from the Ashby Clinic. There, M. Sheikholislam, M.D. recommended x-rays of his wrist due to the pain and swelling. When Olukoya continued to experience neck and back pain, he sought treatment from Dr. Berklich, a chiropractor, and subsequently saw Gary Myerson, M.D., a board-certified physician. Dr. Myerson took x-rays and treated Olukoya for his neck and wrist problems including a ganglion cyst into which he injected a steroid. According to Dr. Myerson, he frequently saw ganglion cysts caused by trauma from such an accident. Dr. Myerson testified that AACCI never inquired about the treatment or paid his bill.

Olukoya offered evidence that: AACCI unjustifiably delayed investigating his claim, failed to keep the statutory minimum of reserves to pay claims, wrongfully denied payments and that Terefe misused funds entrusted to AACCI. At trial, an insurance industry

expert with 30 years' experience in claim processing, Wayne Rasmussen, reviewed this claim. Rasmussen testified that AACCI and Terefe had "everything they needed [in 1988] to pay at least some of the bills, if not all of them." After examining the file and other evidence, Rasmussen determined that AACCI and Terefe deviated from industry standards by doing absolutely nothing to investigate the claim for several years.

The director of the Examinations Division for the Office of Insurance testified that AACCI was undercapitalized and failed to keep adequate financial reserves to pay claims. Lynn Birkett, a financial examiner for the Office of Insurance, discovered that Terefe had taken more than $130,000 in cash loans for his own use from AACCI reserves. Birkett testified that insurance companies are "strictly prohibited" from lending money to their officers.

The defense's only witness was Terefe, the sole person responsible for denying Olukoya's claim. Although Terefe asserted that it was AACCI's procedure to verify bills before payment, he admitted that no one from AACCI ever contacted or attempted to contact Dr. Berklich, Dr. Myerson, or Westside Radiology Associates. AACCI refused to pay Dr. Myerson's bill because Terefe believed that the cyst was not related to the accident, despite Dr. Myerson's contrary medical opinion. Terefe offered no reason for refusing to pay the radiology bill which ruled out a wrist fracture. Terefe said he was not willing to pay any portion of Dr. Berklich's bills because "he's in the habit of padding bills." Terefe refused to pay the $845 bill from Dr. Sheikholislam because he felt that doctor was neither believable nor competent. Terefe had no medical training, and yet, did not seek any independent advice about the propriety of the treatment. Terefe conceded that despite receipt of the police report, copies of the invoices for medical treatment, and demand letters, he denied the claim and continued to deny it even after this Court held that it was unlawful to designate medical providers. *Olukoya*, 202 Ga. App. at 254 (2).

After the jury returned a verdict for Olukoya for $1,784 in medical expenses, $3,731 in costs, a $446.06 penalty, and $69,525 in attorney fees, AACCI filed this appeal. In a cross-appeal, Olukoya contends the trial court erred by denying his request for post-trial attorney fees. *Held*:

## Case No. A98A0571

1. In several enumerations of error, AACCI contends that the trial court committed reversible error by excluding information which AACCI claimed raised questions about the competency and credibility of Dr. Sheikholislam, one of Olukoya's treating physicians. It is undisputed that Dr. Sheikholislam, who provided the initial

treatment to Olukoya, was duly licensed to practice medicine in Georgia at the time of that treatment. However, it is also undisputed that Dr. Sheikholislam had run afoul of state medical licensing officials in Texas and Georgia both before and after the time he provided that treatment. Ultimately, Dr. Sheikholislam pleaded guilty to two federal counts for unlawfully prescribing drugs and had his Georgia medical license revoked.[1]

Prior to trial, AACCI proffered in mass a two-inch stack of numerous exhibits. This stack of more than 350 pages included exhibits concerning Dr. Sheikholislam's troubles with the Texas Board of Medical Examiners, a 46-count federal indictment, suspension of his DEA license, and a warrant for Dr. Sheikholislam's arrest for failure to report to his probation officer. Nothing in the proffer specifically addressed the treatment or condition of Olukoya. Olukoya opposed the admission of these documents claiming that they were irrelevant, hearsay, prejudicial, wholesale character assassination, and improper impeachment of a witness not present for trial. The trial court determined that Dr. Sheikholislam's subsequent federal prosecution and subsequent loss of his ability to practice medicine were irrelevant but reserved ruling on any evidence of Dr. Sheikholislam's troubles before he treated Olukoya.

The admission or exclusion of evidence is reviewed by an abuse of discretion standard. *Wood v. Browning-Ferris Indus. &c.*, 206 Ga. App. 707, 708 (3) (426 SE2d 186) (1992). Questions of relevance are generally matters within the trial court's discretion, and it is not error to exclude evidence that is not related to an issue at trial. *Sleeth v. State*, 197 Ga. App. 349, 350 (3) (398 SE2d 298) (1990). Further, a judge may exercise discretion in excluding even otherwise relevant evidence if he finds that " ' "its probative value is substantially outweighed by the risk that its admission will . . . create substantial danger of undue prejudice or of confusing the issues or of misleading the jury." ' (Cit.)" *Kane v. Cohen*, 182 Ga. App. 485, 487 (2) (356 SE2d 94) (1987).

AACCI contends that the entire exhibit, which was solely aimed at attacking Dr. Sheikholislam, was admissible as original evidence to explain its conduct in denying benefits. See *Jackson v. State*, 256 Ga. 536, 537-538 (3) (350 SE2d 428) (1986). We disagree.

This case was originally controlled by the Georgia No-Fault Act (OCGA § 33-34-1 et seq.) repealed by Ga. L. 1991, p. 1608, effective October 1, 1991. Under that former law, no-fault benefits became

---

[1] Although AACCI takes issue with the fact that Dr. Sheikholislam treated Olukoya with three injections of steroids, a review of the 46-count indictment shows that none of the counts involved the unlawful prescription of steroids. Many steroids, including ACTH, with which Olukoya was treated, are not regulated as controlled substances. OCGA § 16-13-27.1.

overdue if not paid within 30 days after an insurer received "reasonable proof of the fact and the amount of loss sustained." Former OCGA § 33-34-6 (b). The failure to timely pay the principal claim for benefits subjected that insurer to a statutory penalty, attorney fees, and punitive damages where the insurer could not prove a good faith refusal to pay benefits within 60 days after proof of loss has been filed. Former OCGA § 33-34-6 (c). But see *State Farm &c. Ins. Co. v. Young*, 207 Ga. App. 355, 357 (427 SE2d 835) (1993); *Terry v. State Farm &c. Ins. Co.*, 205 Ga. App. 224, 227 (422 SE2d 212) (1992).

The date on which an insurer was deemed to have received "reasonable proof of the fact and the amount of loss sustained" by its insured was that date upon which the insurer received sufficient proof from the insured to enable the insurer to verify or disprove through the exercise of reasonable diligence the basic components of the insured's claim. *Hufstetler v. Intl. Indem. Co.*, 183 Ga. App. 606, 608 (2) (359 SE2d 399) (1987). See *Lawson v. State Farm &c. Ins. Co.*, 256 Ga. 285, 286 (347 SE2d 565) (1986) (purpose of statutory 30/60-day requirements was to ensure prompt payment after insurer receives proof of loss); see *Strickland v. American Home Assurance Co.*, 186 Ga. App. 425, 428 (367 SE2d 241) (1988).

In this case, it is undisputed that AACCI received Olukoya's demand letters and proof of loss on March 16, 1988 and May 23, 1988 and that on June 21, 1988, AACCI took a "firm stand" in denying the claim. Thus, Olukoya's no-fault benefits became overdue as a matter of law 30 days after his demand and AACCI's exposure to the 25 percent statutory penalty and reasonable attorney fees ripened after the 60-day period expired. Former OCGA § 33-34-6 (b). Under the No-Fault Act, AACCI had the burden of showing that its failure or refusal to pay the benefits at issue within 30 days was based on "reasonable cause." *Binns v. MARTA*, 250 Ga. 847, 848 (301 SE2d 877) (1983) (a jury's determination of bad faith should be upheld on appeal where there is any evidence).

Olukoya's expert testified without contradiction that AACCI had sufficient documentation before it to know that a claim was being made in 1988. Yet, the evidence is undisputed that AACCI took no action to verify the claim or to seek out any additional information it needed to verify the claim for several years, until sometime in 1992. Such inaction and delay plainly violated the legislative intent of mandating prompt resolution of no-fault claims. *Hufstetler*, 183 Ga. App. at 609 (2).

Even assuming arguendo that AACCI did not realize that its initial denial of Olukoya's claim had no legal basis as we found in *Olukoya*, 202 Ga. App. at 254, AACCI still failed to process the claim within 30 days after that ruling (reconsideration denied December 12, 1991). By Terefe's own admission, he did not even bother to com-

plete an investigation of the merits of the medical claims after this Court's decision in 1991, until after Olukoya refiled his complaint in September 1992: "[W]e were informed that the lawsuit was dismissed and we didn't pursue it [an investigation of the merits]." Because AACCI failed to process the claim within 30 or even 60 days of our decision in 1991, we believe that it would violate public policy as well as the intent of the No-Fault Act to permit AACCI to utilize derogatory information it obtained years after the claim ripened. See *State Farm Fire &c. Co. v. Martin*, 174 Ga. App. 308, 310 (329 SE2d 577) (1985) (litigation of issue of first impression does not mean insurer denied claim in good faith or insulate insurer from bad faith penalty); *Knight v. Stevens Logging*, 173 Ga. App. 359, 360 (1) (326 SE2d 494) (1985) (judgment right for any reason will be upheld). Even assuming without deciding that part or all of the mega exhibit had been admissible to explain conduct as AACCI contends, the exhibit was still susceptible to being excluded on other grounds such as relevance, as the trial court found, or the improper injection of character into issue. *Ivester v. State*, 252 Ga. 333, 335 (2) (313 SE2d 674) (1984); *Echols v. State*, 174 Ga. App. 829, 830 (1) (331 SE2d 619) (1985). Accord *DeCastro v. State*, 221 Ga. App. 83, 85 (1) (470 SE2d 748) (1996). See *Roper v. State*, 263 Ga. 201, 202 (2) (429 SE2d 668) (1993) (evidence must be competent even though admissible under OCGA § 24-3-2). At issue was whether the medical treatment for which Olukoya sought reimbursement arose from the automobile accident, not Dr. Sheikholislam's character.

It is well established that where a document is tendered as a whole, it may be excluded in its entirety when a portion is inadmissible.[2] *A. M. Kidder & Co. v. Clement A. Evans & Co.*, 117 Ga. App. 346, 350 (4) (160 SE2d 869) (1968). This massive exhibit contained hearsay and irrelevant information, such as: multiple copies of subpoenas to different pharmacists, a petition by the State for the release of Dr. Sheikholislam's psychiatric records, a subpoena to a GBI document examiner, a pretrial bond form, and an affidavit submitted to seek a sentence correction. After the trial court deemed the entire proffered exhibit inadmissible, AACCI failed to excise any documents which may have otherwise been admissible. Accordingly, we conclude that the trial court did not manifestly abuse its discretion in rejecting the exhibit in its entirety. *Moore v. Graham*, 221 Ga. App.

---

[2] AACCI's Exhibit 46 was a voluminous document with numerous exhibits from the Composite State Board of Medical Examiners' proceeding against Dr. Sheikholislam. Admission of investigative records of the Board appear to be precluded by OCGA § 43-34-37 (d) ("no part of any such record shall be released for any purpose other than a hearing before the board; nor shall such records be subject to subpoena"). See *Kutner v. Davenport*, 257 Ga. 456, 457 (360 SE2d 586) (1987).

616, 617 (1) (472 SE2d 152) (1996); *Kane*, 182 Ga. App. at 487 (2). See *American Assn. of Cab Cos. v. Egeh*, 205 Ga. App. 228, 231 (7) (421 SE2d 741) (1992). To hold otherwise would effectively eviscerate the rule that OCGA § 24-3-2 is to be contained within its proper limits and applied sparingly. *Teague v. State*, 252 Ga. 534, 536 (1) (314 SE2d 910) (1984).

AACCI also contends that as a result of the exclusion of these documents, it was foreclosed from informing the jury that it had legitimate reasons for denying the claim. This is simply not borne out by the record. The trial court did not preclude all discussion about Dr. Sheikholislam's treatment. On direct, when Terefe testified that he concluded that Dr. Sheikholislam was incompetent and not believable, he was not asked to explain the basis for this opinion. His counsel simply changed the subject. Later, when Terefe complained "I think I'm bound not to say the statements I would really like to answer," the trial court advised Terefe to talk with his attorney "and if you want him to follow up on it on redirect." This counsel did not do. We see no reason why AACCI should derive benefit from its tactical blunder in not electing to follow the court's suggestion. See *Foster v. State*, 230 Ga. 186, 187 (1) (195 SE2d 902) (1973) (" 'A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later.' "). Nor did AACCI point to anywhere in the transcript where the trial court prohibited Terefe from testifying as to why he denied the claim. See *Egeh*, 205 Ga. App. at 232 (7). Nor do we see where AACCI asserted that it should be permitted to present testimony on that issue separate and apart from the mass exhibit it proffered. Thus, notwithstanding AACCI's contention to the contrary, it was not deprived of an opportunity to fully defend itself. It alone decided not to present any evidence that the doctors who treated Olukoya overcharged or provided substandard or unnecessary medical treatment. It alone opted not to call any witnesses other than Terefe, and it alone chose not to elicit more information from him.

Further, AACCI's own evidence belies its contention that the court prevented it from presenting a defense by excluding the documents because its entire case turned on proving that Dr. Sheikholislam was incompetent. On the contrary, Terefe admitted Dr. Berklich's treatment could be accident related, but stated that he refused to pay Dr. Berklich's bills because he felt that doctor always overcharged. Terefe offered no specific reason for AACCI's refusal to pay for x-rays which ruled out a wrist fracture. Terefe testified that he refused to pay Dr. Myerson's bill because he believed Olukoya's cyst was not accident related. This evidence all went to credibility. Having considered it, the jury obviously rejected Terefe's version. We must respect that conclusion. See *Southeastern Security Ins. Co. v.*

*Hotle*, 222 Ga. App. 161, 162 (1) (473 SE2d 256) (1996) (evidence on appeal must be construed to uphold verdict). Accordingly, the trial court did not err in denying AACCI's motion for a new trial.

2. AACCI contends that the trial court committed reversible error by excluding its Exhibit 33. That document was a single handwritten page which purportedly indicates that Olukoya had a ganglion cyst of unknown origin at the time of his initial visit to Dr. Sheikholislam. The admissibility of this exhibit is controlled adversely to AACCI by the holding of *Egeh*, 205 Ga. App. at 231 (7). In that case, AACCI attempted to introduce the report of a physician's examination of the plaintiff which concluded that the plaintiff was not injured. AACCI wanted to offer the report for the limited purpose of showing its good faith in denying benefits. Id. We upheld the exclusion of the report made by a non-testifying physician. In this case, as we found in *Giles v. Taylor*, 166 Ga. App. 563 (1) (305 SE2d 154) (1983), the exhibit was inadmissible hearsay.

3. Pretermitting whether dismissal is the appropriate remedy for alleged violations of Uniform Superior Court Rule ("USCR") 3.1, we find no merit to AACCI's contention that Olukoya wilfully violated this rule. Although the record does show that Olukoya dismissed his complaint in superior court and refiled in state court to avoid being forced to trial before he was ready, we do not find that this is the type of conduct USCR 3 was designed to prevent. Compare *Hicks v. State*, 231 Ga. App. 552, 555 (2) (499 SE2d 341) (1998). The rule contemplates a system of assigning cases "designed to prevent any person's choosing the judge to whom an action is to be assigned. . . ." USCR 3.1. Although Olukoya's action affected the judge to whom the case was assigned, he did not attempt to choose the judge who would hear his case.

4. AACCI contends that the trial court erred in refusing to reduce or disallow the award of attorney fees. The amount, if any, of attorney fees recoverable because of bad faith by an insurer requires jury determination. OCGA § 33-4-6. A judgment for bad faith and attorney fees should be affirmed if there is any evidence to support it, unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer. *First Financial Ins. Co. v. American Sandblasting Co.*, 223 Ga. App. 232, 233 (2) (477 SE2d 390) (1996). In this case, there was evidence to support the judgment. AACCI failed to follow insurance industry procedures for contesting coverage and failed to maintain proper reserves to pay claims. Terefe admitted that he used AACCI's funds for himself. AACCI failed to investigate any of the medical bills for over four years and never attempted to verify some of them. Accordingly, the judgment was proper. *St. Paul Fire &c. Ins. Co. v. Snitzer*, 183 Ga. App. 395, 397 (2) (358 SE2d 925) (1987).

Nor was the amount of attorney fees awarded erroneous. Notwithstanding AACCI's claim to the contrary, both of Olukoya's attorneys differentiated the time they devoted to prosecuting the bad faith claim and to the unsuccessful RICO claim. Both explicitly testified as to their exact time expended and their rates for billing that time.

### Case No. A98A0572

In a cross-appeal, Olukoya claims that he is entitled to post-trial attorney fees incurred in defending the judgment. We agree. All of the work done on a case of this type, including work done on appeal, may be considered in awarding attorney fees. *First Financial Ins. Co. v. Rainey*, 195 Ga. App. 655, 661 (6) (394 SE2d 774) (1990), overruled on other grounds, 261 Ga. 52 (401 SE2d 490) (1991). Consequently, we reverse the trial court's judgment denying post-trial attorney fees and direct the trial court to conduct further proceedings upon the return of the remittitur for the purpose of assessing such attorney fees. Id.

*Judgment affirmed in Case No. A98A0571. Judgment reversed and case remanded with direction in Case No. A98A0572. Johnson, P. J., and Smith, J., concur.*

DECIDED JULY 16, 1998 —
RECONSIDERATIONS DENIED JULY 31, 1998 —

*Sidney L. Moore, Jr.*, for appellant.
*Calabro & Jennette, Michael M. Calabro, Hicks, Casey & Barber, Mark A. Barber*, for appellee.